(No. 57813.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MICHAEL TERRELL, Appellant.

*Opinion filed February 1, 1984.*

SIMON, GOLDENHERSH, and CLARK, JJ., dissenting.

Robert Agostinelli, Deputy Defender, and Pamela Peters, Assistant Defender, of the Office of the State Ap-

pellate Defender, of Ottawa for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Michael B. Weinstein and David Bindi, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MORAN delivered the opinion of the court:

The defendant, Michael Terrell, was indicted by the grand jury of Kankakee County for the offenses of attempted armed robbery and unlawful use of a weapon. Charles Lott was charged, by the same indictment, with attempted armed robbery and possession of marijuana. The cases were severed for trial and Terrell waived his right to be tried by a jury. At the close of the State's case in chief, the defendant moved for a directed verdict. The motion was taken under advisement and later denied. The record reveals that a written order was entered on December 28, 1981, finding defendant guilty only of attempted armed robbery, for which he was sentenced to two years' probation. The appellate court, with one judge dissenting, affirmed the judgment. (110 Ill. App. 3d 1086.) We allowed defendant's petition for leave to appeal (87 Ill. 2d R. 315(a)).

The sole issue raised on appeal is: Whether the evidence presented is sufficient to establish the essential elements of the offense of attempted armed robbery.

The evidence revealed that on August 7, 1980, at approximately 6:15 a.m., an anonymous telephone call was received by the Kankakee city police. The caller stated that two men, armed with guns, were hiding behind a service station. This report was dispatched and was responded to by Officer Whitehead in one patrol car, and Officers Pepin and Rokus, who were patrolling the area, in another car.

A diagram, entered into evidence, shows that the service station is located on the southwest corner of Erzinger and Maple streets. The first building south of the

station, facing Maple Street, is a construction company. Further south is a tool company. To the rear of the buildings is a large grassy lot which extends to an alley running parallel to the buildings.

Officer Whitehead arrived at the scene within minutes of the radio dispatch and only seconds before Officers Rokus and Pepin. Whitehead pulled into the alley and onto the empty lot behind the station, where he immediately observed a man, crouched in the weeds, 20 to 30 feet from the station. As the officer got out of his car, the defendant, who he saw carrying a gun, jumped up from the weeds, ran towards the fence, climbed to the other side and proceeded south down Maple Street. Officer Whitehead testified that the defendant disposed of the gun sometime before he scaled the fence, although he could not remember seeing it being dropped.

Twelve to fifteen minutes after he was initially observed, Officer Pepin discovered the defendant hiding in the weeds behind the tool company, approximately 280 feet from the service station. The defendant had removed his shirt and was lying on it. A black nylon stocking with a knot in the end of it was found in his pocket. Although the defendant claimed that he was going to the gas station to buy cigarettes, the officer found no money on defendant's person. Officer Whitehead, later, positively identified the defendant as the man he had observed with the gun.

As Officers Rokus and Pepin approached the scene, they observed Whitehead's car and a subject wearing a yellow shirt, later identified as Charles Lott, going over the fence. Rokus apprehended Lott, three minutes later, in the rear of the construction company, approximately 180 feet from the service station. Both Rokus and Pepin identified Lott as the man they had observed scaling the fence. Officer Pepin searched Lott's pants, finding one bag of cannabis and a black stocking with a knot tied on

the end. During his search for the second suspect, Officer Pepin found a fully loaded revolver lying on the ground, six inches from the fence. It is unclear from the record if the station was open at the time the officers arrived on the scene. Officer Whitehead did notice, however, that the station was open at some time during his search of the area.

The defendant maintains that the State's evidence is insufficient to establish the two essential elements of the offense of attempt. Section 8—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 8—4(a)) provides:

> "A person commits an attempt when, with *intent* to commit a specific offense, he does any act which constitutes a *substantial step* toward the commission of that offense." (Emphasis added.)

Section 18—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a)) provides:

> "A person commits armed robbery when he or she [takes property from the person or presence of another by the use of force or by threatening imminent use of force] while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon."

We find that the facts and circumstances of this case are sufficient to prove that the defendant possessed the requisite intent to commit a specific armed robbery and that he took a substantial step toward the commission of that armed robbery. For the reasons to follow, therefore, we affirm the judgment of the appellate court.

It is well established that, to obtain a conviction for attempt, the State must prove that the defendant intended to commit a specific offense. (*People v. Stroner* (1983), 96 Ill. 2d 204, 211; *People v. Trinkle* (1977), 68 Ill. 2d 198, 202; *People v. Viser* (1975), 62 Ill. 2d 568, 581.) As the court stated in *Viser*, "[t]here is no such criminal offense as an attempt to achieve an unintended result." (62 Ill. 2d 568, 581.) The intent to commit a criminal offense need not

be expressed, but may be inferred from the conduct of the defendant and the surrounding circumstances. (*People v. Mulcahey* (1978), 72 Ill. 2d 282.) Thus, in *Mulcahey*, where the defendant was convicted of attempted armed robbery, the court was able to infer the requisite intent to take money from a victim by force, although no specific demand for money had been made.

While the defendant, in the instant case, does not deny the presence of "some" criminal intent, he maintains that the evidence fails to "imply a design to commit an armed robbery at the station." He suggests a list of alternative targets and offenses which includes the crime of burglary as opposed to armed robbery. In addition, he finds it significant that the State failed to establish that the gas station was open when he was initially discovered.

We find this argument unpersuasive. It is unreasonable to expect a trier of fact to infer intent to commit burglary, rather than armed robbery when confronted with a suspect who was seen carrying a loaded revolver and in possession of a ladies' stocking but no burglary tools. In addition, the trial court could reasonably infer that the service station was the object of defendant's plan. The defendant was observed in close proximity to the station, by Officer Whitehead, as he arrived on the scene. This observation was in conformity with the initial tip from the telephone caller who specifically indicated that the suspects were hiding behind the service station. As for the victim necessary for an armed robbery, the trier of fact may reasonably have inferred that the defendant was awaiting the attendant's arrival before taking the final step in his plan. Furthermore, although armed robbery requires a victim, "[i]t [is] not *** a defense to a charge of attempt that because of a misapprehension of the circumstances it would have been impossible for the accused to commit the offense attempted." (Ill. Rev. Stat. 1979, ch. 38, par. 8—4(b).) It is not a defense to the charge of attempted armed robbery, therefore,

to take a substantial step toward the commission of the armed robbery only to find the victim, the attendant, not yet present.

The evidence presented to the trier of fact, in this case, revealed a defendant who had concealed himself in the weeds in close proximity to a service station, which was about to open, while in possession of a stocking mask and a fully loaded revolver. In further support of an inference of criminal intent, defendant's efforts to elude the police as well as his weak excuse for his presence at the scene, could also be properly considered. (*People v. Harris* (1972), 52 Ill. 2d 558, 561.) Faced with these facts, we find it incredulous that defendant had any intent other than the armed robbery of the service station.

We turn next to what has been described as "one of the most troublesome problems" in the area of inchoate offenses: "when preparation to commit an offense ceases and perpetration of the offense [attempt] begins." (Ill. Ann. Stat., ch. 38, par. 8—4(a), Committee Comments, at 512 (Smith-Hurd 1972).) Answering this question requires an analysis of the second statutory element of the offense of attempt — "any act which constitutes a substantial step toward the commission of that offense." (Ill. Rev. Stat. 1979, ch. 38, par. 8—4(a).) Although it is not necessary that a defendant complete the last proximate act in order to be convicted of attempt, our cases have held that mere preparation is not a substantial step. (*People v. Elmore* (1971), 50 Ill. 2d 10, 12; *People v. Woods* (1962), 24 Ill. 2d 154, 158.) It would be an impossible task to compile a definitive list of acts which, if performed, constitute a substantial step toward the commission of every crime. Such a determination can only be accomplished by evaluating the facts and circumstances of the particular case. (*People v. Wallace* (1974), 57 Ill. 2d 285, 292.) This is not to suggest, however, that analysis of cases which have defined "substantial step" cannot provide some guidance.

In affirming the decision of the trial court, the appellate court, in this case, relied on *People v. Burleson* (1977), 50 Ill. App. 3d 629. When placing the facts in this case on the continuum between preparation and perpetration, comparison with the facts in *Burleson* becomes useful. In *Burleson*, the defendant and his accomplice had approached a bank while "in possession of a shotgun, suitcase and disguises which were in place." (50 Ill. App. 3d 629, 633.) Only the quick action of a man inside the bank, who bolted the door as the perpetrators approached, prevented completion of the offense. The court found that the defendant in *Burleson* had taken a substantial step toward the armed robbery of the bank. The defendant, in the instant case, did not yet have his mask on nor had he arrived at the station's front door. It would be unreasonable to believe, however, that the defendant's actions did not place him in " 'dangerous proximity to success.' " *People v. Paluch* (1966), 78 Ill. App. 2d 356, 360, quoting *Hyde v. United States* (1912), 225 U.S. 347, 388, 56 L. Ed. 1114, 1134, 32 S. Ct. 793, 810 (Holmes, J., dissenting).

A later appellate court decision, *People v. Reyes* (1981), 102 Ill. App. 3d 820, provides further comparison with the facts of the instant case. The defendants in *Reyes* were found guilty of attempted armed robbery. While in possession of a rifle, they approached, but did not enter, a drugstore. The intended victims were inside the store. Shortly after the defendants' arrival on the scene, several patrons walked out of the drugstore. Reyes and his codefendant began to run while, at the same time, the codefendant fired his rifle. They were arrested in a nearby school yard a short time later. In a statement, Reyes said that the plan was to rob the victims as they exited the drugstore.

Reyes maintained that he could not be found guilty of attempted armed robbery because he had never entered the drugstore. In rejecting that argument, the court noted that, by Reyes' own admission, his plan did not contem-

plate entry into the building. Relying on *Burleson,* the court went on to say that when the victim of an intended armed robbery is within a building, "entry into that building is not required for a finding of attempt armed robbery. \*\*\* *Burleson* stands for the principle that a substantial step has been taken when an actor possesses the materials necessary to carry out the crime, at or near the place contemplated for its commission." (102 Ill. App. 3d 820, 835.) Like the defendants in *Burleson* and *Reyes,* the defendant, in the case at bar, was in possession of the materials necessary to carry out an armed robbery and was near the place contemplated for its commission. He was armed with a loaded revolver, a disguise and the assistance of an accomplice, whose presence and identical disguise indicated a prearranged plan. He was lying in wait, only 25 to 30 feet from his target, with gun in hand. It was only the arrival of the police which caused him to abandon his plan.

When defining "attempt" it becomes problematic deciding when to allow the police to intervene in an unfolding course of criminal conduct. While caution must be exercised to avoid punishment for inconclusive acts, prevention of an intended crime is necessary. (Wechsler, Jones & Korn, *The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation & Conspiracy,* 61 Colum. L. Rev. 571, 572 (1961).) The defendants in *Burleson, Reyes* and the case at bar were involved in crimes which posed a serious threat of great bodily harm to the victim. It should not be necessary to subject victims to face to face confrontation with a lethal weapon in order to make a positive finding of the essential element of a substantial step.

The Model Penal Code has set forth a list of acts which may be considered to be a substantial step, when strongly corroborative of the actor's criminal purpose. The appellate court, in this case, found the defendant's conduct to be described by several acts on the list. These were:

"(a) lying in wait, searching for or following the contemplated victim of the crime;

(b) ***

(c) reconnoitering the place contemplated for the commission of the crime;

(d) ***

(e) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances;

(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;

(g) ***." (Model Penal Code sec. 5.01(2) (Proposed Official Draft 1963).)

A comparison of the categories of acts included on this list with the specific actions of the defendant gives further support to a finding of a substantial step.

The record reflects no error which requires reversal. We find the evidence presented in this case is sufficient to establish, beyond a reasonable doubt, defendant's intent to commit armed robbery of an individual within the service station and that he took a substantial step toward the commission of the armed robbery. The judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

The crime of attempt has two unambiguous requirements—*"intent* to commit a specific offense," and an "act" which constitutes a *substantial step* toward the commission of that offense." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 38, par. 8—4(a).) I do not believe that either the intent requirement or the substantial step requirement have been met in this case.

The few facts proved here suggest, at most, a general

intent to engage in some form of mischief in the general area in which defendant was arrested. The majority uses the same facts to establish both intent to commit a specific armed robbery, and a substantial step in the commission of that robbery. These facts are defendant's presence in the vicinity of the station, and his possession of a gun and of a woman's stocking capable of being used as a face mask.

This result goes far beyond prior Illinois law. The evidence here falls short of unambiguously establishing an intent to commit a specific offense. Further, the majority, while relying on the Model Penal Code, ignores its requirement that listed conduct be considered a substantial step toward the commission of a crime only if it is "strongly corroborative of the actor's criminal purpose." (Model Penal Code sec. 5.01(2) (Proposed Official Draft 1962)). With no independent evidence of intent, *i.e.* criminal purpose, the majority is equating defendant's conduct with a substantial step without corroboration.

*People v. Mulcahey* (1978), 72 Ill. 2d 282, does not stand, as the majority suggests, for the proposition that "[t]he intent to commit a criminal offense need not be expressed, but may be inferred from the conduct of the defendant and the surrounding circumstances." (99 Ill. 2d at 431-32.) On the specific and rather strange and complicated facts of *Mulcahey*, this court held that "proof of intent to commit armed robbery did not require that he make a specific demand of [the intended victim] for the money *which he had instructed him to bring.*" (Emphasis added.) (72 Ill. 2d 282, 286.) In that case, the defendant held the wife of a bank president hostage in her own home and forced her to phone her husband. The defendant then instructed the husband to bring $25,000 ransom to a shopping center. The husband informed the police and was told that there might be plainclothes officers in the delivery area. When the husband reached the shopping center, he left the briefcase containing the money and returned home,

where he learned that his wife was free and unharmed. He returned to the shopping center to retrieve the briefcase, and saw a man in his wife's automobile. Thinking that the man was a plainclothes officer, he approached the car, opened the door, and told the man that his wife was all right. However, the man who was the kidnaper pointed a gun at the husband and said, "Get in the car or you're a dead man." The husband fled.

The defendant in *Mulcahey* was convicted of aggravated kidnaping and attempted armed robbery. Unlike the situation here, the defendant there had demanded money from the husband earlier that day in their phone conversation. The *Mulcahey* court did not infer a demand where there was none; the court relied on the entire chain of events beginning with the telephone demand for money and ending with the attempted use of the gun to obtain control over the husband and his money. Defendant's prior demand indicated his plan to obtain control over the $25,000, and his conduct was corroborative of the criminal intent evidenced by the armed threat. In contrast, the defendant in this case approached no one with a weapon; he made no demands to turn over money, to get into a car, or to do anything else. There was no corroborating evidence of a planned armed robbery. As far as the record shows, defendant made no phone calls, gave no signs, and told no one of any plans. No individual testified that defendant had any plan to rob the station. Defendant pleaded not guilty and made no oral or written statements indicating such a plan.

At most, all the State has proved is preparation to commit some as yet unspecified offense, perhaps involving one of several other businesses located in the immediate vicinity. Although it is not necessary that the defendant complete the last proximate act in order to be convicted of attempt in Illinois, the statute nonetheless requires a substantial step toward commission of the offense. Mere

preparation is not a substantial step. (*People v. Wallace* (1974), 57 Ill. 2d 285; *People v. Elmore* (1971), 50 Ill. 2d 10; *People v. Woods* (1962), 24 Ill. 2d 154, *cert. denied* (1962), 371 U.S. 819, 9 L. Ed. 2d 59, 83 S. Ct. 34.) The acts of defendants in those cases came much closer to criminal conduct than defendant's behavior here, suspicious as it was. In *People v. Wallace* (1974), 57 Ill. 2d 285, the defendants offered money to the police officers who seized the money from them; they were convicted of attempted bribery. In *People v. Elmore* (1971), 50 Ill. 2d 10, the defendants, who were convicted of theft by deception, listed a stereo, which they had previously sold and delivered, on an insurance claim form, falsely indicating that the stereo had been destroyed by fire. Once they submitted the claim form, defendants could only have intended that they be reimbursed for an item which they knew had not been destroyed. In *People v. Woods* (1962), 24 Ill. 2d 154, the defendant was convicted of attempted abortion after he accepted and counted his fee, explained the operation to the patient, and gave her a sedative.

It is clear from these cases that there is no catalogue of acts which invariably constitute a substantial step toward the commission of every crime. The line between preparation and attempt is difficult to specify and can only be drawn by evaluating the facts of each case (Ill. Ann. Stat., ch. 38, par. 8—4(a), Committee Comments, at 512 (Smith-Hurd 1972)). The significance of various acts becomes apparent only in the light of the defendant's criminal intent.

In *People v. Eveland* (1969), 43 Ill. 2d 90, 93, this court reversed a conviction for attempting to obstruct justice because the State failed to prove the requisite intent. After the police arrested two men in connection with a recent armed robbery, they obtained a warrant to search the trailer where one of the men lived. Although the police found defendant and another individual carrying clothing

from the trailer to a nearby parked car, there was no evidence that the defendant was removing or intended to remove incriminating evidence from the trailer. This case is similar. While the defendant's presence and behavior near the service station arouse suspicion, they do not provide clear evidence of an intent to commit a specific crime. Under Illinois law, a defendant cannot be convicted of attempt on the basis of suspicious behavior alone.

The defendant's actions here were preliminary activities, consistent with a number of different outcomes. It does not appear to me "incredulous that defendant had any intent other than the armed robbery of the service station." (99 Ill. 2d at 433.) There was no evidence in the record that there was anyone in the service station during the time defendant was hiding in the weeds. There is also no evidence as to the customary opening time either of the station, or of the other nearby businesses. There is no indication whether anyone was present in any of the other business establishments, or whether anyone was walking on the street, in the alleyway, or in the empty lot. Potential armed-robbery victims could have been located in any of those places. Further, I do not find it "unreasonable to expect a trier of fact to infer intent to commit burglary, rather than armed robbery when confronted with [this] suspect." (99 Ill. 2d at 432.) Many burglaries are committed without special tools; defendants enter through open windows or throw rocks found in empty lots to break windows, to give but two of many examples. Too, burglars often wear masks to hide their identities in the event that they are inadvertently discovered. Guns are also carried by burglars in case they unexpectedly encounter other people.

The problem in defining attempt is to allow police to intervene in an unfolding course of criminal conduct before the intended harm is actually done, while at the same time avoiding punishment for equivocal acts which may or may not eventually lead to criminal harm. (Wechsler, Jones &

Korn, *The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy*, 61 Colum. L. Rev. 571, 572 (1961).) It is always difficult to draw this line so as to properly balance the conflicting needs of the police and the public at large against the rights of the individual citizen. Our legislature has drawn the line at the point where the defendant has taken a substantial step toward commission of the crime. This court cannot interfere with the legislature's decision and with that balance by moving the line further in the direction of mere preparation and undefined intent.

Reliance by the appellate court and by the majority in this court on *People v. Burleson* (1977), 50 Ill. App. 3d 629, is misplaced. The appellate court held that the defendant in *Burleson* had taken a substantial step toward the armed robbery of a bank. Burleson was just outside the bank with a disguise, a shotgun, and a suitcase all in place. As the majority points out, *"[o]nly the quick action of a man inside the bank, who bolted the door as the perpetrators approached, prevented completion of the offense."* (Emphasis added.) (99 Ill. 2d at 434.) That is far different from the situation here where defendant was, according to the majority opinion, approximately 30 feet away from one of several possible targets, was never observed moving toward the station or any other target, drew no weapon, approached no one, and made no demands of any kind on anyone (for there is no evidence that any potential victim was present), and carried a woman's stocking capable of being used as a mask in the pocket of pants so tight that the police officer had difficulty removing it when he searched defendant. This is hardly "dangerous proximity" to completion of the offense. It is ironic that the majority relies on Justice Holmes' famous phrase, as quoted in *People v. Paluch* (1966), 78 Ill. App. 2d 356, 360, quoting *Hyde v. United States* (1912), 225 U.S. 347, 388, 56 L. Ed. 1114, 1134, 32 S. Ct. 793, 810 (Holmes, J., dissenting). In

both *Hyde v. United States* (1912), 225 U.S. 347, 387, 56 L. Ed. 1114, 1134, 32 S. Ct. 793, 810 and *People v. Paluch* (1966), 78 Ill. App. 2d 356, 359-60, the full passage includes the statement, "*** intention and overt act may all be present without amounting to a criminal attempt." In addition, there must be dangerous proximity to success. Here, I am unable to find intention or overt act. How can there be dangerous proximity, in Justice Holmes' term, when those two initial hurdles have not even been surmounted? To understand what Justice Holmes meant by "dangerous proximity" I suggest referring to his often quoted example illustrating the distinction between preparation and attempt. The purchase of a box of matches is too remote to sustain a conviction for attempting to burn a haystack. Lighting a match in proximity to the haystack would be enough to sustain the charge. (O. W. Holmes, The Common Law 67-69 (1881).) No act of the defendant here could be regarded as equivalent to lighting the match. At most his actions are analogous to being some distance away from the haystack with the matches in his pocket.

The second case relied on by the majority, *People v. Reyes* (1981), 102 Ill. App. 3d 820, presents an even more striking contrast to this case. Several defendants waited outside a drugstore with a rifle, while patrons were inside. When the intended victims left the store, two defendants began to run, and one fired the rifle. Defendant Reyes admitted that the plan was to rob the victims as they left the drugstore. Corroborating evidence of a plan to rob the station is precisely what is missing in this case. Even if the majority in *People v. Reyes* (1981), 102 Ill. App. 3d 820, 835 and the majority in this case (99 Ill. 2d at 435) are correct in stating that "*Burleson* stands for the principle that a substantial step has been taken when an actor possesses the materials necessary to carry out the crime, at or near the place contemplated for its commission," there must be evidence of what the crime is, and of the place contem-

plated for its commission. There is nothing in the record here which indicates that defendant planned to rob this particular station at this particular time. The majority's suggestion that the presence of an accomplice with an identical disguise indicates a prearranged plan (99 Ill. 2d at 435) does not resolve the question, since these go only to general intent. Neither the accomplice nor the disguises are unambiguous evidence of intent to commit the specific offense of armed robbery of someone within the station. As I have explained above, both are consistent with a variety of other goals. Since there is no independent corroborating evidence of a plan to rob someone within the station, it is impossible to isolate a specific intent.

Although the majority mentions a number of acts which resemble those listed in section 5.01 of the Model Penal Code as "not *** insufficient as a matter of law" to be regarded as a substantial step (Model Penal Code sec. 5.01(2) (Proposed Official Draft 1962)), it includes, yet ignores, the introductory language "if strongly corroborative of the actor's criminal purpose." Also it fails to mention the preceding sentence which states pointedly: "Conduct *shall not be held to constitute a substantial step* under Subsection (1)(c) of this Section *unless it is strongly corroborative of the actor's criminal purpose.*" (Emphasis added.) (Model Penal Code sec. 5.01(2) (Proposed Official Draft 1962).) (See 99 Ill. 2d at 436-37.) This is consistent with the understanding of the reporter of the Model Penal Code. "[T]he requirement of a substantial step will result in the imposition of attempt liability only in those instances in which some firmness of criminal purpose is shown ***." Wechsler, Jones & Korn, *The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy*, 61 Colum. L. Rev. 571, 593 (1961).

The analysis mandated by the statute requires two steps. There must first be criminal culpability, the unambig-

uous expression of the intent to commit a particular act. Only after intent has been established can the court determine whether the defendant's acts constitute a substantial step toward commission of the identified crime. The Federal courts have reached a similar conclusion in construing the Model Penal Code. *Cf. United States v. Jackson* (2d Cir. 1977), 560 F.2d 112, *cert. denied* (1977), 434 U.S. 941, 54 L. Ed. 2d 301, 98 S. Ct. 431, and (1978), 434 U.S. 1017, 54 L. Ed. 2d 762, 98 S. Ct. 736; *United States v. Stallworth* (2d Cir. 1976), 543 F.2d 1038; *United States v. Mandujano* (5th Cir. 1974), 499 F.2d 370, *cert. denied* (1975), 419 U.S. 1114, 42 L. Ed. 2d 812, 95 S. Ct. 792.

Since the defendant's acts do not establish beyond a reasonable doubt his intent to commit armed robbery of an individual within the service station, and since no other evidence of either intent or substantial step toward commission was presented, I do not believe that defendant's conduct can support a conviction for attempted armed robbery. For the reasons explained above, I dissent and would reverse the conviction.

GOLDENHERSH and CLARK, JJ., join in this dissent.