26 January 2000

NO. 5-97-0811

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from 

Plaintiff-Appellee, ) Cir­cuit Court of 

      v. ) Coles County     SHAVUN M. HAWKINS, ) No. 96CF154

Defendant-Appellant. ) 

     ) Hon­orable

) Ashton C. Waller, Jr.,

) Judge Presid­ing.

JUSTICE MYERSCOUGH delivered the opinion of the court:

After a bench trial in July 1997, defendant, Shavun M. Hawkins, was con­vict­ed of criminal sexual assault 
(720 ILCS 5/12-

13(a)(2) (West 1996)), attempt (criminal sexual as­sault) 
(720 ILCS 5-8/4(a), 12-13(a)(2) (West 1996)), and residen­tial bur­glary
 
(720 ILCS 5/19-3 (West 1996)).  The trial court sentenced him to concurrent four-year terms for the sexu­al assault and resi­dential burglary and three years for the attempt (criminal sexu­al assault).­­­  The truth-in-sentencing pro­vi­sion of section 3-6-

3(a)(2)(ii) of the Unified Code of Correc­tions (Unified Code) (730 ILCS 5/3-6-3(a)(2)(ii) (West 1996)) was applied to the sen

tence for crimi­nal sexual assault, and de­fen­dant was also fined $110 under the sexual-as­sault-fines stat­ute (730 ILCS 5/5-9-

1.7(b)(1) (West 1996)).  On ap­peal, de­fen­dant claims (1) he was not proved guilty of at­tempt (crimi­nal sexual assault) beyond a reasonable doubt; (2) if his first argu­ment succeeds, his bur­

glary con­vic­tion, predicat­ed on the at­tempt (crim­i­nal sexual assault) must also be reversed; (3) the truth-in-sen­tenc­ing stat­

ute is un­constitu­tional; and (4) he is enti­tled to credit against the $110 sexual-assault fine for time spent in custody.  We af

firm and remand with directions.

I. BACKGROUND

B.H. testified she was a student at Eastern Illinois Uni­ver­si­ty (Eastern) in May 1996 and was living in a house at 1528 Fourth Street in Charleston with two of her sorority sis­

ters, Dorothy and Ra­chel.  Rachel's bed­room was in the base­ment, while B.H. and Doro­thy each had a bedroom on the sec­ond floor.  A sheet hung across the doorway to B.H.'s room be­cause the up­stairs bed­rooms had no doors.  The front door to the house did not have a working lock.  

According to B.H.'s testimony, on May 30, 1996, B.H. and her room­mates went to Mother's Bar where she had three vodka and cran­berry juice drinks.  B.H. was also taking Claritin D, an allergy medi­cation, which caused her to feel "shaky and groggy."  She last took the medication at 6 or 7 p.m.  B.H. and her room­

mates socialized with other uni­ver­sity students at the bar until it closed at 1 a.m.  When they got home, B.H. imme­di­ately fell asleep on the couch in the liv­ing room on the main floor of the house.  

B.H.'s roommates tes­tified to what hap­pened while B.H. slept.  An im­promptu "after bars" party commenced shortly after they got home, with 15 to 20 people in attendance.  Scott, Ra

chel's boyfriend (and a bartender at Mother's), tes­ti­fied he ar­

rived after 2 a.m.  He testified three black men were in atten­

dance; two of them he knew, and one--later identi­fied as de­fen­

dant--he did not know.  The party broke up at about 3 a.m.  

B.H. testified she woke up at approximately 3:30 a.m. and was alone in the living room, where the lights were still on.  She was unaware that a party had occurred or that one had been planned.  After using the bath­room and pouring a glass of lem­on­

ade, she went up­stairs.  On the way to her bedroom, she peeked into Dorothy's room and saw that she was not there.  B.H. took some aspirin, went to her room, and got into bed without changing out of her sun­dress.  She fell asleep imme­di­ate­ly.  

B.H. woke again at 4 or 4:15 a.m. to find de­fen­dant on top of her, kiss­ing her on the mouth and hav­ing in­ter­course with her.  When she realized what was happen­ing she told him to "get the f_ _ _ off of me" and pushed him away.  He asked her if she was "sure."  She rolled to the floor and got up.  Her dress had been pulled up and her underpants were around her feet.  Defen

dant's pants were around his ankles.  No lights were on in the room, but ambient light came in from the hallway and streetlights that shined through the window.  B.H. ran across the hall to Dorothy's room, turned on the light and tried to wake Dorothy.  While B.H. was screaming to wake Doro­thy, defendant stood at the doorway for ap­proximately 15 sec­onds, then went downstairs.  B.H. was able to see defendant more clearly at this point, as the lights were on.  Scott and Ra­chel then came up­stairs and tried to com­fort B.H.  B.H. did­ not tell them what happened, but started screaming again when she saw that de­fendant had come up­stairs be­

hind Scott and Ra­chel.  Scott then escorted defen­dant out.

On B.H.'s request, Rachel, Dorothy, and Scott took B.H. to her best friend's apart­ment.  There, B.H. revealed what had hap­pened and one of her friends called the police.  An officer ar­rived and took a description of de­fen­dant from B.H.  B.H. was then taken to a hos­pi­tal.

S.G. was also a student at Eastern Illinois University.  In May 1996, she was living in a townhouse at 950 Ed­gar, No. 7, in Charleston.  S.G. and Kristin both had bedrooms in the base­

ment, and Kristin had to walk through S.G.'s bed­room to get to her own.  Three other peo­ple, including Jennifer and Bonnie, also lived in the house, occu­pying the up­stairs bed­rooms.  The front door to the house was commonly left unlocked because friends of the resi­dents frequent­ly came and went.

S.G. testified she did homework until about 11:30 p.m. on May 30, 1996, then went to Mother's Bar.  After she returned home, she did more schoolwork before retiring between 2 and 2:30 a.m.  Kristin was not home at the time.  S.G. slept in a single bed, posi­tioned against a wall.

At approximately 5 a.m., S.G. heard someone (later iden­tified as defendant) coming downstairs.  She assumed it was Kristin.  S.G. then heard what sounded like someone bump­ing into things and feel­ing around in the dark.  She thought perhaps Kristin was drunk.  Then defendant bumped the edge of S.G.'s bed, leaned against it, and felt along the top of the bed with his hands.  At one point, he grab­bed S.G.'s foot underneath the cov­

ers.  De­fen­dant then went to the light switch and turned it on and off again rap­idly.  The light flashed so quickly S.G. was not able to see anything.  S.G. then felt defendant sit on the side of the bed and heard his shoelaces being untied and his shoes hitting the floor.  He start­ed to get under the cov­ers when S.G. asked what was "going on."  Defen­dant leaned over, put his arm on her shoulder and said "what's the matter baby, I came to kick it with you."  S.G. sprung out of bed and turned on the light.  She saw defen­dant, still sitting on the bed, wearing black pants and a white shirt, but with his shoes off.  She asked him who he was and what he was doing there.  He said his name was Shavun and someone had sent him to the house.  S.G. did not understand what defendant said, so she asked him again.  This time he said Kristin had sent him.  S.G. went up­stairs, scream­ing.

S.G. woke Jennifer first, then they both went into Bonnie's room, closed the door, and called the police.  From in­

side the room they heard defendant leave the house.  When Offi­cer Dave Cham­bers ar­rived, S.G. described defendant as a black male, 5 feet 10 or 11 inches tall, weighing about 185 pounds, with a mus­cu­lar build, short hair, wearing black pants and a long-sleeve white pullover shirt.  S.G. had no recollection of having seen defen­dant before.

Officer Chambers testified he was dispatched to S.G.'s address at 5:12 a.m.  After S.G. described defendant to Chambers, he remembered he had seen a man who fit the description when on his way to S.G.'s address.  He had seen a black male riding a bicycle, wearing black pants, with a white shirt draped over his shoulder.  He was 5 feet 11 inches to 6 feet tall.  Cham­bers esti­mated the dis­tance be­tween B.H. and S.G.'s ad­dresses as rough­ly one mile.

Two days after these incidents B.H., S.G., and Scott  picked de­fen­dant out of a photo lineup at the po­lice sta­tion.  De­fen­dant was sub­se­quent­ly ar­rest­ed and charged with two counts of criminal sexual as­sault of B.H. (count I under subsec­tion (a)(2) of the statute, alleging defen­dant com­mit­ted an act of sexual pene­tra­tion on B.H., know­ing she was un­able to con­sent, and count II under subsec­tion (a)(1), al­leging de­fen­dant com­mit­

ted an act of sexual penetra­tion on B.H. by force); and one count of at­tempt (crim­i­nal sexu­al assault) of S.G. and one count of resi­den­tial bur­glary of S.G.'s resi­dence.  The trial judge­­ found defendant guilty of all charges but crim­inal sexual as­sault of B.H. as drafted in count II (by force).  T­his appeal followed.

II. ANALYSIS

A. Sufficiency of Evidence To Prove Defendant 

Committed a "Substantial Step" Toward Criminal Sexual Assault

Defendant contends he was not proved guilty of attempt (criminal sexual assault) of S.G. beyond a reasonable doubt be­

cause, as a matter of law, his acts did not constitute a substan­tial step to­ward com­mis­sion of a criminal sexual assault.  On review, we con­sider the evi­dence in the light most fa­vorable to the pros­ecu­tion and will affirm a conviction if any rational trier of fact could have found the es­sen­tial ele­ments of the crime beyond a reason­able doubt.  
Peo­ple v. Schott
, 145 Ill. 2d 188, 203, 582 N.E.2d 690, 697 (1991).  Crimi­nal convictions will not be over­turned on re­view unless the evi­dence is so im­probable or unsatis­factory that it creates a rea­sonable doubt as to the defendant's guilt.  
Schott
, 145 Ill. 2d at 203, 582 N.E.2d at 697.  Whether the un­contested facts constitute a substantial step under the applica­ble statute is a question of law requiring a 
de
 
novo
 stan­dard of re­view.  
People v. Garriott
, 253 Ill. App. 3d 1048, 1050, 625 N.E.2d 780, 783 (1993).   

"A person commits an attempt when, with intent to com­

mit a spe­cif­ic offense, he does any act which constitutes a sub­

stantial step toward the commission of that offense."
  720 ILCS 5/8-4(a) (West 1996).  Determining when mere preparation to com

mit an offense ends, and perpe­tration of an offense begins, is one of the most "trou­ble­some" areas in the law of in­choate of

fenses.  
Peo­ple v. Terrell
, 99 Ill. 2d 427, 433, 459 N.E.2d 1337, 1340 (1984).  Thus, what consti­tutes a sub­stan­tial step is de­ter­

mined by the facts and cir­cum­stances of each par­ticu­lar case.  
People v. Smith
, 148 Ill. 2d 454, 459, 593 N.E.2d 533, 535 (1992).  Al­though the accused need not have completed the "last proximate act" to actual commission of a crime, mere prep­a­ra­tion is not enough.  
Terrell
, 99 Ill. 2d at 433, 459 N.E.2d at 1340.  A sub­stan­tial step should put the accused in a "danger­ous proxim­

ity to suc­cess."  
People v. Morissette
, 225 Ill. App. 3d 1044, 1046, 589 N.E.2d 144, 146 (1992).  

The crime of at­tempt is com­plete upon the com­pletion of a sub­stantial step (with the requisite intent), and subsequent aban­don­ment of the crim­i­nal pur­pose is no defense.  
People v. Myers
, 85 Ill. 2d 281, 290, 426 N.E.2d 535, 539 (1981).  Like­

wise, it is no de­fense to an at­tempt charge that be­cause of a misap­pre­hen­sion of cir­cum­stances it would have been impossi­ble for the ac­cused to com­mit the offense at­tempted.  720 ILCS 5/8-

4(b) (West 1996); 
Terrell
, 99 Ill. 2d at 432, 459 N.E.2d at 1340.     Illinois courts have relied on the Model Penal Code ­ for guidance in determining whether an accused has taken a sub­

stan­tial step toward commission of a crime.  See 
Terrell
, 99 Ill. 2d at 435-36, 459 N.E.2d at 1341-42.  Under the Model Penal Code, an at­tempt has occurred when a per­son, act­ing with the re­quired in­tent, "purpose­ly does or omits to do any­thing which, under the circum­stances as he be­lieves them to be, is an act or omis­sion consti­tuting a sub­stan­tial step in a course of conduct planned to cul­minate in his commission of the crime."  Model Penal Code §5.01(1)(c), at 296 (1985).  The Model Penal Code lists types of con­duct that 
shall 
not, as a mat­ter of law, be held insuffi­cient to sup­port an at­tempt con­vic­tion, so long as the act is strongly cor­roborative of the actor's criminal pur­pose.  The list includes the follow­ing:

"(a) lying in wait, searching for[,] or follow­ing the con­tem­plated victim of the crime; 

(b)  enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;

(c)  reconnoitering the place contem­

plated for the commission of the crime;

(d) unlawful entry of a structure, vehi­

cle[,] or enclosure in which it is contem­

plat­ed that the crime will be committed."  Model Penal Code §5.01(2), at 296.

This list manifests the Model Penal Code's emphasis on the nature of steps tak­en, rather than on what remains to be done to commit a crime.  As noted in the Com­ments to sec­tion 5.01, "[t]hat fur­ther major steps must be taken before the crime can be com­pleted does not preclude a find­ing that the steps al­ready under­taken are substan­tial."  Model Penal Code §5.01, Com­ment 6(a), at 329.  

1. "
Forced
 
Penetration
"

Defendant contends that conviction of attempt (criminal sexu­al as­sault) requires proof, beyond a reasonable doubt, defen­

dant took a sub­stan­tial step toward 
forced
 
pene­tration
, and cites section 12-13(a)(1) of the Criminal Code of 1961 (Code) (720 ILCS 5/12-13(a)(1) (West 1996)) and 
People v. Montefolka
, 287 Ill. App. 3d 199, 678 N.E.2d 1049 (1997).  We first note that defen

dant's at­tempt (crim­i­nal sexu­al as­sault) in­dict­ment did not charge defen­dant with attempt­ (criminal sexual as­sault) under sec­tion 12-13(a)(1).  The in­dict­ment con­tains only a gener­al cita­tion to sections 12-13 and 8-4(a) of the Code.  When an in­

dict­ment does not specify a statu­tory sub­section, the de­fen­dant may be found guilty under any subsec­tion.  See 
People v. Kyles
, 303 Ill. App. 3d 338, 347-48, 708 N.E.2d 391, 397-98 (1998).  Sec­tion 12-13(a) sets forth two al­ter­na­tive types of con­duct, any one of which will con­sti­tute a crim­i­nal sexu­al as­sault:      

"(a) [T]he ac­cused com­mits crim­inal sexu­al as­sault if he or she:

(1) commits an act of sexual penetration by the use of force or threat of force; or

(2) commits an act of sexual penetration and the ac­cused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent."  
720 ILCS 5/12-13(a) (West 1996). 

While under subsection (a)(1), defendant's conviction would re­

quire a substantial step toward "forced" penetration, under sub­

sec­tion (a)(2), an at­tempt would re­quire that defendant took a sub­stan­tial step to­ward sexual pene­tra­tion while the victim was un­able to give know­ing consent. 

For his assault on B.H., defendant was convicted of crim­inal sexual assault as de­fined in section 12-13(a)(2) of the Code.  Defendant was ac­quitted on the second count, in which he was charged under sec­tion 12-13(a)(1). 

While argu­ably defen­dant may have com­mitted an act of sexu­al pene­tration by the use of force on B.H. ("force" mean­ing "strength or power of any degree that is exercised without justi­

fication or contrary to law upon a person or thing" (Web­ster's Third New International Dic­tionary 887 (1986)), the trial court found otherwise, and the propriety of that decision is not be­fore us.

The State's attempt (criminal sexual assault) case was built on the in­fer­ence that de­fen­dant in­tend­ed to com­mit an as­

sault on S.G. iden­tical to that com­mit­ted against his first vic­

tim, B.H.  There­fore, ­­the State need not prove defendant commit

ted a sub­stan­tial step to­ward "forced" pene­tra­tion, in the tra­

dition­al sense, but that he committed a sub­stan­tial step toward com­mit­ting an act of sexu­al pene­tra­tion while the victim was unable to give knowing con­sent.  Our conclu­sion on this point renders 
Montefolka
 and the cases cited therein inappo­site to a substantial-step analysis, as the courts in each of those cases re­quired proof of a sub­stan­tial step to­ward forced pene­tra­tion, with a traditional view of the meaning of the word "force" in mind.  Those cases will be dis­cussed in great­er de­tail below. 

2. 
"
Sexual
 
Penetration
"

To determine whether defendant took a substantial step toward an act of sexual penetration with S.G. while she was asleep and unable to give knowing consent, we first turn to the stat­u­to­ry defi­ni­tion of "sex­u­al pene­tra­tion":  

"'Sexual penetration' means 
any con­tact, howev­er slight, between the sex organ or anus of one person by an object, the sex organ, mouth[,] or anus of an­other person, or any in­trusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilin­gus, fellatio[,] or anal penetration."  720 ILCS 5/12-12(f) (West 1996). 

See 
Peo­ple v. Velasco
, 216 Ill. App. 3d 578, 589, 575 N.E.2d 954, 961 (1991).  "Sexual penetration" and "sexual intercourse" are not synonymous.  A sub­stan­tial step to­ward sexu­al pene­tra­tion does 
not re­quire a sub­stan­tial step toward sexual in­ter­course, but a sub­stan­tial step to­ward any one of the myri­ad forms of contact in­cluded in the stat­utory defini­tion.  For exam­ple, sexu­

al penetra­tion can occur through hand to genital contact no mat

ter how slight the vaginal intrusion.  

This broad definition of sexual pene­tration is particu

larly relevant to a substantial-step anal­y­sis as one is soon­er in a "dan­ger­ous prox­im­ity to suc­cess" (
Morissette
, 225 Ill. App. 3d at 1046, 589 N.E.2d at 146) under the stat­utory defini­tion.­­

3. 
Defendant
 
Took
 
Substantial
 
Step
 
Toward
 

Committing
 
Criminal
 
Sexual
 
Assault

After careful consideration of the facts and circum­

stances of this case, the applicable statutes, precedent, and the Model Penal Code, we conclude that the evidence was sufficient to per­mit the trier of fact, here the judge, to conclude that de­fen­

dant took a sub­stan­tial step to­ward com­mit­ting crim­i­nal sexual assault against S.G.  The con­duct at issue in­cludes the follow­

ing.  De­fendant had just been escorted out of B.H.'s house, where he had intercourse with B.H. while she slept.  He un­law­ful­ly en­

tered S.G.'s resi­dence and pro­ceed­ed to her bed­room.  After fum­

bling around in the dark, defendant grabbed S.G.'s foot.  He turned the light switch on and off.  Defen­dant then sat on the edge of S.G.'s bed and re­moved his shoes.  He start­ed to get under the cov­ers until he was inter­rupted by S.G.'s urgent re­

quest for an ex­pla­na­tion.  De­fen­dant then put his arm on S.G.'s shoul­der and told her he was there to "kick it" with her.  Defen

dant did not leave until S.G. went upstairs screaming.

With these facts in evidence, the judge could rea­son­

ably con­clude that de­fen­dant had crossed the line where prepara­

tion ends and actual execution of a criminal act begins.  That de­fen­dant was mere­ly prep­a­ring to commit a criminal sexual as­

sault would be a rea­son­able con­clu­sion had he been interrupted while looking for S.G.'s house (see 
Smith
, 148 Ill. 2d 454, 593 N.E.2d 533 (revers­ing attempt (robbery) convic­tion where defen

dant was arrested while driving a stolen cab in search of the jew­el­ry store he intended to rob)); or upon en­ter­ing the resi

dence, in the absence of additional evidence corrobora­ting his in­tent to commit a sexual assault.  However, defendant's acts, spe­cif­i­cal­ly, sitting on S.G.'s bed, taking off his shoes, crawl

ing be­tween the sheets, and announcing his sexual objective to "kick it" with her, were not only corrob­orative of his intent, but brought him with­in a "dan­ger­ous prox­im­i­ty of suc­cess" as well.  Depending on what S.G. was wearing at the time (a fact not in the record), defendant may have been danger­ously close to achiev­ing sexu­al pene­tra­tion as de­fined in sec­tion 12-12(f) of the Code.  

An attempt crime is one "that falls short of completion through means other than the defendant's voluntary relent­ing."  
People v. Dogoda
, 9 Ill. 2d 198, 203, 137 N.E.2d 386, 389 (1956).  Defendant's "attempt" ended when S.G. stopped it by removing herself from the situation, not by defendant's volition.  The trier of fact could reasonably con­clude that, when de­fen­dant got into bed with S.G., he was past the point where he was likely to expe­rience a change of heart.  See 
Fryer v. State
, 325 N.W.2d 400, 406 (Ia. 1982); 
Hamiel v. State
, 92 Wis. 2d 656, 666, 285 N.W.2d 639, 646 (1979) (hold­ing that even a "slight act" can be a sub­stantial step if it is taken in fur­ther­ance of an at­tempted crime and renders a vol­un­tary termi­na­tion of the accused's course of action improba­ble).       

Defendant calls our attention to all the actions he did not take, in an attempt to persuade us that his conduct did not amount to a substantial step.  Defen­dant points out that he did not take off any of his clothes but his shoes; he did not touch or fondle S.G.'s genitals or breasts; he did not act "ag­gressive­

ly" toward S.G.; he did not demand that she remove her clothes; and he did not demand sexual con­tact.  We are not per­suaded.  Defendant's conduct did amount to a substantial step toward the commission of a sexual assault.  Defendant does not have to re

move his clothing, remove S.G.'s clothing, act "aggres­sive­ly," or "demand" sexual contact to commit crim­i­nal sexu­al assault under section 12-
13(a)(2). 

More­over, had de­fen­dant actu­ally "fon­dled" S.G.'s geni­

tals, he would have com­mit­ted the of­fense itself and an at­tempt convic­tion would not now be before us. 

We emphasize that our holding here, that defendant's conduct constitutes a substantial step toward criminal sexual assault under section 12-13(a)(2) of the Code, is limited to the facts of this case and does not preclude a finding that similar or identical conduct constitutes a substantial step toward criminal sexual assault under any other subsection of section 12-13 of the Code.

4. 
Montefolka
 
Distinguished

Defendant relies upon 
Montefolka
, 287 Ill. App. 3d 199, 678 N.E.2d 1049, and the cases cited there­in. 
 In 
Montefolka
, the vic­tim was awak­ened in the night by her whining dog.  When she went downstairs to check on the dog, she dis­cov­ered the de­fen­dant in­side the house.  She ran for the door but defen­dant grabbed her.  He wres­tled her to the floor and, while hold­ing her in a "choke hold," twice or­dered her to take off her un­der­pants.  The victim refused and even­tual­ly, through con­ver­sa­tion, was able to calm the de­fen­dant and he left the house with some cash.  
Montefolka
, 287 Ill. App. 3d at 202, 678 N.E.2d at 1051.  The First District Appellate Court reversed the defendant's at­tempt (crim­inal sexu­al as­sault) con­vic­tion, finding he had not taken a sub­stan­tial step to­ward the forced act of pene­tra­tion.  
Montefolka
, 287 Ill. App. 3d at 211, 678 N.E.2d at 1057.

Montefolka
 is inapplicable here not only because the defendant there was charged with attempted aggravated criminal sexual assault, but also because the case is factually distin

guishable from the case at hand.  Defendant took more steps clearly indicative of an intent to commit a sexual assault than did the defendant in 
Montefolka
.  Defendant entered S.G.'s home and bedroom as she slept, he located S.G. in the bed, removed his shoes, got into bed under the covers with her, put his arm around her, and told her that he had come to "kick it" with her.  

Moreover, we also dis­agree with the 
Montefolka
 court's conclu­sion as well as its reasoning.  The court emphasized that actions the de­fen­dant did 
not
 take to support its find­ing that the acts he 
did
 take did not constitute a sub­stan­tial step.  The court points out that the de­fen­dant made no overt act to­ward the victim's geni­tals, did not use force to re­move her cloth­ing, did not ex­pose himself, and did not touch, caress, or fondle any part of the victim's body.  
Montefolka
, 287 Ill. App. 3d at 209, 678 N.E.2d at 1055.   

We find this emphasis on what the defendant did 
not
 do to be an ­inappropriate test for deter­mining whether a substan­tial step was tak­en.  Moreover, such a test is inconsis­tent with the Model Penal Code.  A sub­stan­tial step can be the very first step beyond mere prep­ara­tion.  That more steps could conceivably have been taken be­fore actual com­mis­sion of a crime does not render that first step in­sub­stan­tial.  Model Penal Code §5.01, Comment 6(a), at 329.  In 
Montefolka
, the at­tempt crime was com­mit­ted and com­plet­ed when the de­fendant had the vic­tim in a "choke hold" and or­dered her to remove her pant­ies.  Surely, breaking into the victim's home, chasing the victim, knocking her to the ground,  holding her in a choke hold, and telling her to remove her under

pants constitutes the use of force in an attempt to commit a sexual penetration.  The victim was fortu­nate in that she was able to talk the defen­dant out of any further as­sault, but her calm head and good for­tune do not negate the defendant's criminal conduct.  

As Jus­tice Theis points out in her dis­sent, the 
Montefolka
 court lost sight of the statutory definition of "pen­e­

tra­tion."  
Montefolka
, 287 Ill. App. 3d at 213, 678 N.E.2d at 1058-59 (Theis, J., dissenting).  As in the case at bar, the de­

fen­dant in 
Montefolka
 would not have to ex­pose him­self to com­mit an act of pene­tra­tion, nor would he have to fondle or ca­ress the victim; yet, the court held that the defendant's fail­ure to com­

mit these acts de­stroyed the State's attempt case.  The 
Montefolka
 court held, in es­sence, that when a man breaks into a home, holds a woman down on the floor, and or­der­s her to re­move her un­der­wear, he is mere­ly 
prep­aring
 to commit a sexu­al assault.  We find this to be logically unsound and a dan­gerous pre­ce­dent.  

In our view, the 
Montefolka
 court also relied too heavi­ly on pre­ce­dent to settle an issue that is properly de­ter­mined on the unique facts and cir­cum­stanc­es of each case.  
See 
Smith
, 148 Ill. 2d at 459, 593 N.E.2d at 535.  The 
Montefolka
 court found that those cases affirming at­tempt con­vic­tions were based on conduct far more "overt and vio­lent" than the conduct of the defendant (
Montefolka
, 287 Ill. App. 3d at 211, 678 N.E.2d at 1057;
 see also 
People v. Kleba
, 110 Ill. App. 3d 345, 442 N.E.2d 605 (1982) (conviction for at­tempt (rape) affirmed where evidence showed the ac­cused fon­dled the victim's vagina, conduct which, under today's statute, would con­stitute a criminal sexual as

sault, rath­er than at­tempt))--again focusing on the negative, 
i.e.
, what that defendant did not do--and deemed it­self "[l]im­it­

ed by the thrust of these cas­es."  
Montefolka
, 287 Ill. App. 3d at 211, 678 N.E.2d at 1057.  That convictions were af­firmed where the acts committed were overt­ly sexu­al and/or vio­lent has no bear­ing on wheth­er less­er acts will con­sti­tute a sub­stan­tial step under a dif­ferent set of cir­cum­stanc­es, and the trial court in this case was clearly correct in convicting under section 12-

13(a)(2) where no force or threat of force was required. 720 ILCS 5/12-13(a)(2) (West 1996).

More­over, the cases reversing attempt convictions cited by the 
Montefolka
 court are ei­ther obsolete­ or otherwise dis­tin­

guish­able from the case at bar.  Both 
Peo­ple v. Bush
, 19 Ill. 2d 151, 166 N.E.2d 91 (1960), and 
People v. Pitts
, 89 Ill. App. 3d 145, 411 N.E.2d 586 (1980), were decided prior to the enactment of our current sexual assault statutes, and at a time when tes­ti­

mony of vic­tims of sexu­al as­sault had to be ei­ther "clear and con­vinc­ing or substantially cor­rob­orat­ed," for the charge to be deemed proved be­yond a rea­son­able doubt and the conviction sus

tained.  See 
Schott
, 145 Ill. 2d at 202, 582 N.E.2d at 696. 

People v. Rayfield
, 171 Ill. App. 3d 297, 525 N.E.2d 253 (1988), reversed an at­tempt (crim­i­nal sexu­al as­sault) convic­

tion because the State failed to prove the accused acted with the required in­tent.  In 
Rayfield
, the 15-year-old defendant entered the victim's apart­ment uninvited and asked the victim if she had any work for him.  She said she did not, but continued to con­

verse with the defen­dant.  The vic­tim tes­ti­fied that she was frightened by defendant because of his size and race and that she felt sorry for him be­cause he was poor and attended a school for "slow learn­ers."  
Rayfield
, 171 Ill. App. 3d at 298, 525 N.E.2d at 254.  At one point the de­fen­dant held the vic­tim and, despite her protesta­tions, at­tempt­ed to carry her toward the bed­room.  The victim was able to talk defen­dant out of any further assault and engaged him in con­ver­sa­tion once again.  Be­fore he left her apartment, de­fen­dant asked the vic­tim if she would show him her vagi­na.  
Rayfield
, 171 Ill. App. 3d at 298-99, 525 N.E.2d at 254.   The issue before the 
Rayfield
 court was defendant's in­

tent, not whether he had taken a sub­stan­tial step.  ­The court, however, misstated the re­quirements for an at­tempt (crim­i­nal sexu­al as­sault) con­viction. 
 The 
Rayfield
 court stat­ed that an attempt (criminal sexual as­sault) con­vic­tion re­quires evidence of the in­tent to have "in­ter­course" not "sexu­al pene­tration," as defined by stat­ute.  
Rayfield
 was decided four years after the en­act­ment of cur­rent sexu­al as­sault laws, which define ­­"sexu­al pene­tra­tion" as "contact, however slight [with] the sex organ" (720 ILCS 5/12-12(f) (West 1996)).  ­ We are not bound to follow cas­es in which the law has been misapplied. 

Rather, 
People v. Jones
, 175 Ill. 2d 126, 676 N.E.2d 646 (1997), cited by defendant and the 
Montefolka
 court, sup­ports our con­clu­sion in this case.  In 
Jones
, the defen­dant was charged with attempt (aggra­vated crimi­nal sexual abuse).  De­fen­dant, an adult male, while com­pletely undressed and alone in a room with the 16­-year-old male victim, asked the boy if he would mas­turbate defendant and if the boy would allow defendant to mastur­bate him.  The boy de­clined and left the room.  
Jones
, 175 Ill. 2d at 129-

30, 676 N.E.2d at 648.  The court held that the defendant's act of expo­sure, coupled with the re­quest for sexual conduct, constituted a sub­stan­tial step, not­with­stand­ing the lack of any actual con­tact between the defen­dant and the victim.  
Jones
, 175 Ill. 2d at 134, 676 N.E.2d at 650.  A con­viction for sexual abuse re

quires "sexu­al conduct," which, as defined by stat­ute, requires actual contact, although such con­tact can be made through cloth­

ing.  720 ILCS 5/12-16(d), 12-12(e) (West 1996).

In 
Jones
, the defendant made no overt move to­ward sexu­

al contact with the vic­tim.  He did not attempt to grab the vic

tim or reach out to touch him in any way.  Nev­er­the­less, the court found defendant's conduct was not "mere preparation" but a substantial step toward commission of criminal sexual abuse.  The court's con­clu­sion is con­sis­tent with the Model Penal Code ap

proach, which focuses on the steps already taken, regardless of what remains to be done.  The defendants in both 
Jones
 and the case at bar were interrupted by the acts of their potential vic­

tims.  We hold, consistent with 
Jones
, that when a substantial step has al­ready been taken and the perpetrator's intent is clear, abandonment of the criminal purpose upon the resistance of the po­ten­tial vic­tim does not ren­der those steps al­ready taken in­sub­stan­tial.     

B. Sufficiency of Evidence To Sustain Burglary Conviction

Defendant further contends reversal of his at­tempt con­vic­tion requires his burglary convic­tion be reversed as well.  Al­though we need not reach this issue in light of our decision to affirm defendant's attempt (criminal sexual assault) convic­tion, we nevertheless take this opportunity to address defendant's argu­ment.  Resi­den­tial bur­glary re­quires entry of the dwell­ing place of another with the intent to commit there­in a felony or theft.  720 ILCS 5/19-3(a) (West 1996).  Defendant's burglary con­viction was predicated on his intent to commit a sexual as

sault against S.G.  On appeal defendant argues the attempt (crim

inal sexual assault) conviction must be reversed because defen

dant's acts did not amount to a substantial step.  In­tent and a sub­stan­tial step are two sepa­rate and dis­tinct ele­ments of an at­

tempt crime.  Defendant's burglary con­vic­tion must be affirmed if the State proved defen­dant en­tered S.G.'s resi­dence with the in­

tent to per­form sexu­al penetra­tion on S.G. while she was unable to give con­sent--which it did--regard­less of whether defendant took a sub­stan­tial step toward such act.  See 
Peo­ple v. Clerk
, 68 Ill. App. 3d 1021, 1029, 386 N.E.2d 630, 635 (1979) (conviction of burglary with intent to commit rape is not legally inconsis

tent with acquittal on at­tempt (rape) charge where defendant did not take a substantial step toward committing rape).  

C. Truth in Sentencing

The material in this Section is nonpublishable under Supreme Court Rule 23 (166 Ill.2d R.23).

[Nonpublishable material removed under Supreme Court Rule 23.]

D. Credit Against Fine

Defendant finally contends that he is entitled to credit against the $110 fine imposed by the trial court.  Pursu

ant to section 110-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14 (West 1996)), any per­son in­car­cer­at­ed on a bail­able of­fense who does not supply bail and against whom a fine is lev­ied on convic­tion of such offense is allowed a credit of $5 for each day incarcer­at­ed.  De­fendant was in­car­cer­at­ed for 86 days. The State con­cedes under 
Peo­ple v. Lem­ons
, 229 Ill. App. 3d 645, 593 N.E.2d 1040 (1992), and 
Peo­ple v. Woodard
, 175 Ill. 2d 435, 677 N.E.2d 935 (1997), that defen­dant is enti­tled to full credit against the fine.   

The prosecutor here asked for imposition of "court costs and $100 sexual assault fine that is mandated by statute, [s]ection 5-9-1.7 of the Unified Code."  Section 5-9-1.7 has not been amended to preclude any reduction in the fine for time served either before or after sentencing (730 ILCS 5/5-9-1(c) (West 1996)) as have other statutory provisions (725 ILCS 240/10(b),(c) (West 1996)); (730 ILCS 5/5-9-1(c) (West 1996)). Accordingly, defendant is entitled to a $5-per-day credit against the sexual assault fine.  However, the remaining $10 is autho

rized ("there shall be added to each fine imposed upon convic

tion") and is not subject to crediting ("[s]uch additional pen

alty shall not be considered a part of the fine for purposes of any reduction made in the fine for time served either before or after sentencing").  725 ILCS 240/10(b) (West 1996).

 III. CONCLUSION

For the foregoing reasons defendant's conviction is affirmed and the cause remanded for issuance of an amended judg­

ment of sentence (1) stating he is entitled to computation of day-for-day good-time credit under section 3-6-3 of the Unified Code prior to enactment of truth in sentencing (730 ILCS 5/3-6-3 (West 1994)) and (2) showing the fine imposed has been reduced to $10.

Affirmed; cause remanded with directions.

STEIGMANN and KNECHT, JJ., concur.