THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ERIC RAYFIELD, Defendant-Appellant.

Third District   No. 3—87—0726

Opinion filed June 17, 1988.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellant.

Gary L. Peterlin, State's Attorney, of Ottawa (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

Eric Rayfield, a 15-year-old minor, was tried as an adult and found guilty after trial by jury of the offenses of attempted criminal sexual assault and unlawful restraint. The circuit court of La Salle County sentenced the defendant to concurrent terms of imprisonment of three years for the attempted criminal sexual assault conviction and one year for the unlawful restraint conviction.

The trial of this case established that on May 10, 1987, between 10:30 a.m. and 11 a.m., the defendant went to the second-floor apartment of 20-year-old Jerri Munks, who worked as a waitress in a restaurant. The defendant knocked on the apartment door three or four times and when no one answered he entered the apartment.

Upon entering the apartment the defendant encountered its occupant, Jerri Munks, who was up and about but clad in a see-through nightgown. The victim Munks testified that defendant asked her if she had any jobs for him. After replying in the negative the victim and the defendant continued to converse. The defendant asked if he could use the bathroom. While he was in the bathroom, the victim put jeans on over her nightgown. After defendant returned from the bathroom, conversation was resumed and the victim learned that the defendant attended the Circuit Breaker School in Seneca, which was a school for slow learners. The victim testified that she was scared because the defendant was a very big black male and she had not previously been around black people.

The defendant and the victim walked out to the porch of the apartment and again there was conversation about the defendant's inability to find a job. The defendant then asked or told the victim that he wanted to hold her. It was the testimony of the victim that she permitted such "holding" because she was frightened and also sorry for the defendant because he was unemployed, poor and attended the school for slow learners.

The defendant held the victim for a short period of time, and when she asked him to let her go, he refused to do so. The victim began to struggle and scream for help. The defendant covered her mouth and threatened to kill her if she continued to scream. The defendant lifted the victim off the floor and carried her toward the

bedroom. The victim protested that she did not want to do anything and the defendant lowered her to the floor. Both parties then sat on a couch and again conversed. The defendant testified that they looked at a photograph album; the victim denied that they looked at any album.

The victim testified that the defendant got up to leave but before he left the apartment he asked her if he could see her vagina. This request the victim refused and she advised the defendant, as she had done several times before, that he should leave since her boyfriend was expected. The defendant then followed the victim out of the door and down the stairway and left the premises.

Mary Comer, age 13, lived in an apartment below that of the victim. Comer testified that on the previous day (May 9, 1987) she had a conversation with the defendant in which he asked where the victim lived and if the man he had seen with her was a boyfriend.

While it is not specifically set forth in the record, the entire time span of the contact of the defendant with the victim was approximately 30 minutes. Approximately 2½ hours after the incident the victim reported the same to the police.

Before directing our attention to the issues raised in this appeal, it should be noted that the factual situation set forth by this court is based on the testimony of the victim, Jerri Munks. The testimony of the defendant contained categorical denials that he struck, threatened or lifted Munks.

The first issue raised by the defendant is that his conviction for attempted criminal sexual assault should be reversed because the State failed to prove beyond a reasonable doubt that he had the requisite specific intent to commit the offense.

The pivotal question raised by the defendant is whether he intended to have sexual intercourse with the victim Munks. Specifically, it was incumbent on the State to prove beyond a reasonable doubt that the defendant intended to forcibly commit an act of penetration. (*People v. Pitts* (1980), 89 Ill. App. 3d 145, 411 N.E.2d 586.) In answering the question as to whether the defendant intended to have intercourse with the victim, an examination should be made of utterances and acts of the defendant at the time of the incident. Such an examination discloses that defendant threatened harm to the victim if she continued screaming. None of the defendant's statements ordered the victim to disrobe, nor did they in any way refer to the act of sexual intercourse. The defendant did not make any overt act toward the victim's genitals, nor did he disrobe or expose himself. The victim testified that the defendant never touched her breasts or but-

tocks, even when he was carrying her. The defendant did ask the victim if he could see her vagina. When she refused this request, the defendant left the premises of the victim. During the trial the victim testified that she told a police officer shortly after the incident that defendant never said he wanted to do anything of a sexual nature.

The State argues that because the defendant on the day before the incident sought information about where the victim lived and whether she had a boyfriend, he (defendant) was obsessed with the victim and that when he entered the victim's apartment his sole purpose was to commit a criminal sexual assault.

To agree with the State's reasoning, this court would be compelled to engage in conjecture and speculation. As stated, intent must be established by the defendant's acts or statements.

In denying a post-trial motion of the defendant the trial court indicated that it "had a lot of problems" with the question of whether the defendant was guilty of attempt. The court said it was "one of the toughest problems" that it had ever had. This court does not condone the defendant's acts; however, they do not establish that he was possessed with the intent to commit the specific offense of criminal sexual assault.

The defendant, as previously stated, was convicted of the offense of unlawful restraint and sentenced to a concurrent term of one year's imprisonment. The record discloses that the defendant for all practical purposes conceded that he was guilty of the charge of unlawful restraint. We will not disturb this conviction. The defendant has been in continuous custody since May 9, 1987. He has served his sentence in full for the offense of unlawful restraint and should be released from custody.

For the reasons stated, the defendant's conviction for attempted criminal sexual assault is reversed. His conviction for the offense of unlawful restraint is affirmed.

Affirmed in part; reversed in part.

HEIPLE and BARRY, JJ., concur.