THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHAVUN M. HAWKINS, Defendant-Appellant.

Fourth District    No. 5—97—0811

Opinion filed January 26, 2000.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

C. Steve Ferguson, State's Attorney, of Charleston (Norbert J. Goetten, Robert J. Biderman, and Perry L. Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MYERSCOUGH delivered the opinion of the court:

After a bench trial in July 1997, defendant, Shavun M. Hawkins, was convicted of criminal sexual assault (720 ILCS 5/12—13(a)(2) (West 1996)), attempt (criminal sexual assault) (720 ILCS 5/8—4(a), 12—13(a)(2) (West 1996)), and residential burglary (720 ILCS 5/19—3 (West 1996)). The trial court sentenced him to concurrent four-year terms for the sexual assault and residential burglary and three years for the attempt (criminal sexual assault). The truth-in-sentencing provision of section 3—6—3(a)(2)(ii) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3—6—3(a)(2)(ii) (West 1996)) was applied to the sentence for criminal sexual assault, and defendant was also fined $110 under the sexual-assault-fines statute (730 ILCS 5/5—9—1.7(b)(1) (West 1996)). On appeal, defendant claims (1) he was not proved guilty of attempt (criminal sexual assault) beyond a reasonable doubt; (2) if his first argument succeeds, his burglary conviction, predicated on the attempt (criminal sexual assault) must also be reversed; (3) the truth-in-sentencing statute is unconstitutional; and (4) he is entitled to credit against the $110 sexual-assault fine for time spent in custody. We affirm and remand with directions.

## I. BACKGROUND

B.H. testified she was a student at Eastern Illinois University (Eastern) in May 1996 and was living in a house at 1528 Fourth Street in Charleston with two of her sorority sisters, Dorothy and Rachel. Rachel's bedroom was in the basement, while B.H. and Dorothy each had a bedroom on the second floor. A sheet hung across the doorway to B.H.'s room because the upstairs bedrooms had no doors. The front door to the house did not have a working lock.

According to B.H.'s testimony, on May 30, 1996, B.H. and her roommates went to Mother's Bar, where she had three vodka and cranberry juice drinks. B.H. was also taking Claritin D, an allergy

medication, which caused her to feel "shaky and groggy." She last took the medication at 6 or 7 p.m. B.H. and her roommates socialized with other university students at the bar until it closed at 1 a.m. When they got home, B.H. immediately fell asleep on the couch in the living room on the main floor of the house.

B.H.'s roommates testified to what happened while B.H. slept. An impromptu "after bars" party commenced shortly after they got home, with 15 to 20 people in attendance. Scott, Rachel's boyfriend (and a bartender at Mother's), testified he arrived after 2 a.m. He testified three black men were in attendance; two of them he knew, and one—later identified as defendant—he did not know. The party broke up at about 3 a.m.

B.H. testified she woke up at approximately 3:30 a.m. and was alone in the living room, where the lights were still on. She was unaware that a party had occurred or that one had been planned. After using the bathroom and pouring a glass of lemonade, she went upstairs. On the way to her bedroom, she peeked into Dorothy's room and saw that she was not there. B.H. took some aspirin, went to her room, and got into bed without changing out of her sundress. She fell asleep immediately.

B.H. woke again at 4 or 4:15 a.m. to find defendant on top of her, kissing her on the mouth and having intercourse with her. When she realized what was happening she told him to "get the f_ _ _ off of me" and pushed him away. He asked her if she was "sure." She rolled to the floor and got up. Her dress had been pulled up and her underpants were around her feet. Defendant's pants were around his ankles. No lights were on in the room, but ambient light came in from the hallway and streetlights that shined through the window. B.H. ran across the hall to Dorothy's room, turned on the light and tried to wake Dorothy. While B.H. was screaming to wake Dorothy, defendant stood at the doorway for approximately 15 seconds, then went downstairs. B.H. was able to see defendant more clearly at this point, as the lights were on. Scott and Rachel then came upstairs and tried to comfort B.H. B.H. did not tell them what happened, but started screaming again when she saw that defendant had come upstairs behind Scott and Rachel. Scott then escorted defendant out.

On B.H.'s request, Rachel, Dorothy, and Scott took B.H. to her best friend's apartment. There, B.H. revealed what had happened and one of her friends called the police. An officer arrived and took a description of defendant from B.H. B.H. was then taken to a hospital.

S.G. was also a student at Eastern Illinois University. In May 1996, she was living in a townhouse at 950 Edgar, No. 7, in Charleston. S.G. and Kristin both had bedrooms in the basement, and Kristin

had to walk through S.G.'s bedroom to get to her own. Three other people, including Jennifer and Bonnie, also lived in the house, occupying the upstairs bedrooms. The front door to the house was commonly left unlocked because friends of the residents frequently came and went.

S.G. testified she did homework until about 11:30 p.m. on May 30, 1996, then went to Mother's Bar. After she returned home, she did more schoolwork before retiring between 2 and 2:30 a.m. Kristin was not home at the time. S.G. slept in a single bed, positioned against a wall.

At approximately 5 a.m., S.G. heard someone (later identified as defendant) coming downstairs. She assumed it was Kristin. S.G. then heard what sounded like someone bumping into things and feeling around in the dark. She thought perhaps Kristin was drunk. Then defendant bumped the edge of S.G.'s bed, leaned against it, and felt along the top of the bed with his hands. At one point, he grabbed S.G.'s foot underneath the covers. Defendant then went to the light switch and turned it on and off again rapidly. The light flashed so quickly S.G. was not able to see anything. S.G. then felt defendant sit on the side of the bed and heard his shoelaces being untied and his shoes hitting the floor. He started to get under the covers when S.G. asked what was "going on." Defendant leaned over, put his arm on her shoulder and said "what's the matter baby, I came to kick it with you." S.G. sprung out of bed and turned on the light. She saw defendant, still sitting on the bed, wearing black pants and a white shirt, but with his shoes off. She asked him who he was and what he was doing there. He said his name was Shavun and someone had sent him to the house. S.G. did not understand what defendant said, so she asked him again. This time he said Kristin had sent him. S.G. went upstairs, screaming.

S.G. woke Jennifer first, then they both went into Bonnie's room, closed the door, and called the police. From inside the room they heard defendant leave the house. When Officer Dave Chambers arrived, S.G. described defendant as a black male, 5 feet 10 or 11 inches tall, weighing about 185 pounds, with a muscular build, short hair, wearing black pants and a long-sleeve white pullover shirt. S.G. had no recollection of having seen defendant before.

Officer Chambers testified he was dispatched to S.G.'s address at 5:12 a.m. After S.G. described defendant to Chambers, he remembered he had seen a man who fit the description when on his way to S.G.'s address. He had seen a black male riding a bicycle, wearing black pants, with a white shirt draped over his shoulder. He was 5 feet 11 inches to 6 feet tall. Chambers estimated the distance between B.H. and S.G.'s addresses as roughly one mile.

Two days after these incidents B.H., S.G., and Scott picked defendant out of a photo lineup at the police station. Defendant was subsequently arrested and charged with two counts of criminal sexual assault of B.H. (count I under subsection (a)(2) of the statute, alleging defendant committed an act of sexual penetration on B.H., knowing she was unable to consent, and count II under subsection (a)(1), alleging defendant committed an act of sexual penetration on B.H. by force); and one count of attempt (criminal sexual assault) of S.G. and one count of residential burglary of S.G.'s residence. The trial judge found defendant guilty of all charges but criminal sexual assault of B.H. as drafted in count II (by force). This appeal followed.

## II. ANALYSIS

### A. Sufficiency of Evidence To Prove Defendant Committed a "Substantial Step" Toward Criminal Sexual Assault

Defendant contends he was not proved guilty of attempt (criminal sexual assault) of S.G. beyond a reasonable doubt because, as a matter of law, his acts did not constitute a substantial step toward commission of a criminal sexual assault. On review, we consider the evidence in the light most favorable to the prosecution and will affirm a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Schott*, 145 Ill. 2d 188, 203, 582 N.E.2d 690, 697 (1991). Criminal convictions will not be overturned on review unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *Schott*, 145 Ill. 2d at 203, 582 N.E.2d at 697. Whether the uncontested facts constitute a substantial step under the applicable statute is a question of law requiring a *de novo* standard of review. *People v. Garriott*, 253 Ill. App. 3d 1048, 1050, 625 N.E.2d 780, 783 (1993).

■ "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8—4(a) (West 1996). Determining when mere preparation to commit an offense ends, and perpetration of an offense begins, is one of the most "troublesome" areas in the law of inchoate offenses. *People v. Terrell*, 99 Ill. 2d 427, 433, 459 N.E.2d 1337, 1340 (1984). Thus, what constitutes a substantial step is determined by the facts and circumstances of each particular case. *People v. Smith*, 148 Ill. 2d 454, 459, 593 N.E.2d 533, 535 (1992). Although the accused need not have completed the "last proximate act" to actual commission of a crime, mere preparation is not enough. *Terrell*, 99 Ill. 2d at 433, 459 N.E.2d at 1340. A substantial step should put the accused in a "dangerous proximity to success."

*People v. Morissette*, 225 Ill. App. 3d 1044, 1046, 589 N.E.2d 144, 146 (1992).

■ The crime of attempt is complete upon the completion of a substantial step (with the requisite intent), and subsequent abandonment of the criminal purpose is no defense. *People v. Myers*, 85 Ill. 2d 281, 290, 426 N.E.2d 535, 539 (1981). Likewise, it is no defense to an attempt charge that because of a misapprehension of circumstances it would have been impossible for the accused to commit the offense attempted. 720 ILCS 5/8—4(b) (West 1996); *Terrell*, 99 Ill. 2d at 432, 459 N.E.2d at 1340.

■ Illinois courts have relied on the Model Penal Code for guidance in determining whether an accused has taken a substantial step toward commission of a crime. See *Terrell*, 99 Ill. 2d at 435-36, 459 N.E.2d at 1341-42. Under the Model Penal Code, an attempt has occurred when a person, acting with the required intent, "purposely does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." Model Penal Code § 5.01(1)(c), at 296 (1985). The Model Penal Code lists types of conduct that shall not, as a matter of law, be held insufficient to support an attempt conviction, so long as the act is strongly corroborative of the actor's criminal purpose. The list includes the following:

"(a) lying in wait, searching for[,] or following the contemplated victim of the crime;

(b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;

(c) reconnoitering the place contemplated for the commission of the crime;

(d) unlawful entry of a structure, vehicle[,] or enclosure in which it is contemplated that the crime will be committed." Model Penal Code § 5.01(2), at 296.

This list manifests the Model Penal Code's emphasis on the nature of steps taken, rather than on what remains to be done to commit a crime. As noted in the comments to section 5.01, "[t]hat further major steps must be taken before the crime can be completed does not preclude a finding that the steps already undertaken are substantial." Model Penal Code § 5.01, Comment 6(a), at 329.

## 1. *"Forced Penetration"*

■ Defendant contends that conviction of attempt (criminal sexual assault) requires proof, beyond a reasonable doubt, defendant took a substantial step toward *forced penetration*, and cites section 12—13(a)(1) of the Criminal Code of 1961 (Code) (720 ILCS 5/12—13(a)(1)

(West 1996)) and *People v. Montefolka*, 287 Ill. App. 3d 199, 678 N.E.2d 1049 (1997). We first note that defendant's attempt (criminal sexual assault) indictment did not charge defendant with attempt (criminal sexual assault) under section 12—13(a)(1). The indictment contains only a general citation to sections 12—13 and 8—4(a) of the Code. When an indictment does not specify a statutory subsection, the defendant may be found guilty under any subsection. See *People v. Kyles*, 303 Ill. App. 3d 338, 347-48, 708 N.E.2d 391, 397-98 (1998). Section 12—13(a) sets forth two alternative types of conduct, any one of which will constitute a criminal sexual assault:

"(a) The accused commits criminal sexual assault if he or she:

(1) commits an act of sexual penetration by the use of force or threat of force; or

(2) commits an act of sexual penetration and the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent[.]" 720 ILCS 5/12—13(a) (West 1996).

While under subsection (a)(1) defendant's conviction would require a substantial step toward "forced" penetration, under subsection (a)(2), an attempt would require that defendant took a substantial step toward sexual penetration while the victim was unable to give knowing consent.

For his assault on B.H., defendant was convicted of criminal sexual assault as defined in section 12—13(a)(2) of the Code. Defendant was acquitted on the second count, in which he was charged under section 12—13(a)(1).

While arguably defendant may have committed an act of sexual penetration by the use of force on B.H. ("force" meaning "strength or power of any degree that is exercised without justification or contrary to law upon a person or thing" (Webster's Third New International Dictionary 887 (1986)), the trial court found otherwise, and the propriety of that decision is not before us.

The State's attempt (criminal sexual assault) case was built on the inference that defendant intended to commit an assault on S.G. identical to that committed against his first victim, B.H. Therefore, the State need not prove defendant committed a substantial step toward "forced" penetration, in the traditional sense, but that he committed a substantial step toward committing an act of sexual penetration while the victim was unable to give knowing consent. Our conclusion on this point renders *Montefolka* and the cases cited therein inapposite to a substantial-step analysis, as the courts in each of those cases required proof of a substantial step toward forced penetration, with a traditional view of the meaning of the word "force" in mind. Those cases will be discussed in greater detail below.

## 2. *"Sexual Penetration"*

■ To determine whether defendant took a substantial step toward an act of sexual penetration with S.G. while she was asleep and unable to give knowing consent, we first turn to the statutory definition of "sexual penetration":

> " 'Sexual penetration' means any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth[,] or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio[,] or anal penetration." 720 ILCS 5/12—12(f) (West 1996).

See *People v. Velasco*, 216 Ill. App. 3d 578, 589, 575 N.E.2d 954, 961 (1991). "Sexual penetration" and "sexual intercourse" are not synonymous. A substantial step toward sexual penetration does not require a substantial step toward sexual intercourse, but a substantial step toward any one of the myriad forms of contact included in the statutory definition. For example, sexual penetration can occur through hand to genital contact no matter how slight the vaginal intrusion.

This broad definition of sexual penetration is particularly relevant to a substantial-step analysis as one is sooner in a "dangerous proximity to success" (*Morissette*, 225 Ill. App. 3d at 1046, 589 N.E.2d at 146) under the statutory definition.

## 3. *Defendant Took Substantial Step Toward Committing Criminal Sexual Assault*

■ After careful consideration of the facts and circumstances of this case, the applicable statutes, precedent, and the Model Penal Code, we conclude that the evidence was sufficient to permit the trier of fact, here the judge, to conclude that defendant took a substantial step toward committing criminal sexual assault against S.G. The conduct at issue includes the following. Defendant had just been escorted out of B.H.'s house, where he had intercourse with B.H. while she slept. He unlawfully entered S.G.'s residence and proceeded to her bedroom. After fumbling around in the dark, defendant grabbed S.G.'s foot. He turned the light switch on and off. Defendant then sat on the edge of S.G.'s bed and removed his shoes. He started to get under the covers until he was interrupted by S.G.'s urgent request for an explanation. Defendant then put his arm on S.G.'s shoulder and told her he was there to "kick it" with her. Defendant did not leave until S.G. went upstairs screaming.

With these facts in evidence, the judge could reasonably conclude that defendant had crossed the line where preparation ends and actual execution of a criminal act begins. That defendant was merely prepar-

ing to commit a criminal sexual assault would be a reasonable conclusion had he been interrupted while looking for S.G.'s house (see *Smith*, 148 Ill. 2d 454, 593 N.E.2d 533 (reversing attempt (robbery) conviction where defendant was arrested while driving a stolen cab in search of the jewelry store he intended to rob)); or upon entering the residence, in the absence of additional evidence corroborating his intent to commit a sexual assault. However, defendant's acts, specifically, sitting on S.G.'s bed, taking off his shoes, crawling between the sheets, and announcing his sexual objective to "kick it" with her, were not only corroborative of his intent, but brought him within a "dangerous proximity of success" as well. Depending on what S.G. was wearing at the time (a fact not in the record), defendant may have been dangerously close to achieving sexual penetration as defined in section 12—12(f) of the Code.

An attempt crime is one "that falls short of completion through means other than the defendant's voluntary relenting." *People v. Dogoda*, 9 Ill. 2d 198, 203, 137 N.E.2d 386, 389 (1956). Defendant's "attempt" ended when S.G. stopped it by removing herself from the situation, not by defendant's volition. The trier of fact could reasonably conclude that, when defendant got into bed with S.G., he was past the point where he was likely to experience a change of heart. See *Fryer v. State*, 325 N.W.2d 400, 406 (Iowa 1982); *Hamiel v. State*, 92 Wis. 2d 656, 666, 285 N.W.2d 639, 646 (1979) (holding that even a "slight act" can be a substantial step if it is taken in furtherance of an attempted crime and renders a voluntary termination of the accused's course of action improbable).

Defendant calls our attention to all the actions he did not take, in an attempt to persuade us that his conduct did not amount to a substantial step. Defendant points out that he did not take off any of his clothes but his shoes; he did not touch or fondle S.G.'s genitals or breasts; he did not act "aggressively" toward S.G.; he did not demand that she remove her clothes; and he did not demand sexual contact. We are not persuaded. Defendant's conduct did amount to a substantial step toward the commission of a sexual assault. Defendant does not have to remove his clothing, remove S.G.'s clothing, act "aggressively," or "demand" sexual contact to commit criminal sexual assault under section 12—13(a)(2).

Moreover, had defendant actually "fondled" S.G.'s genitals, he would have committed the offense itself and an attempt conviction would not now be before us.

We emphasize that our holding here, that defendant's conduct constitutes a substantial step toward criminal sexual assault under section 12—13(a)(2) of the Code, is limited to the facts of this case and

does not preclude a finding that similar or identical conduct constitutes a substantial step toward criminal sexual assault under any other subsection of section 12—13 of the Code.

### 4. *Montefolka Distinguished*

Defendant relies upon *Montefolka*, 287 Ill. App. 3d 199, 678 N.E.2d 1049, and the cases cited therein. In *Montefolka*, the victim was awakened in the night by her whining dog. When she went downstairs to check on the dog, she discovered the defendant inside the house. She ran for the door but defendant grabbed her. He wrestled her to the floor and, while holding her in a "choke hold," twice ordered her to take off her underpants. The victim refused and eventually, through conversation, was able to calm the defendant and he left the house with some cash. *Montefolka*, 287 Ill. App. 3d at 202, 678 N.E.2d at 1051. The First District Appellate Court reversed the defendant's attempt (criminal sexual assault) conviction, finding he had not taken a substantial step toward the forced act of penetration. *Montefolka*, 287 Ill. App. 3d at 211, 678 N.E.2d at 1057.

*Montefolka* is inapplicable here not only because the defendant there was charged with attempted aggravated criminal sexual assault, but also because the case is factually distinguishable from the case at hand. Defendant took more steps clearly indicative of an intent to commit a sexual assault than did the defendant in *Montefolka*. Defendant entered S.G.'s home and bedroom as she slept, he located S.G. in the bed, removed his shoes, got into bed under the covers with her, put his arm around her, and told her that he had come to "kick it" with her.

Moreover, we also disagree with the *Montefolka* court's conclusion as well as its reasoning. The court emphasized that actions the defendant did *not* take to support its finding that the acts he *did* take did not constitute a substantial step. The court points out that the defendant made no overt act toward the victim's genitals, did not use force to remove her clothing, did not expose himself, and did not touch, caress, or fondle any part of the victim's body. *Montefolka*, 287 Ill. App. 3d at 209, 678 N.E.2d at 1055.

We find this emphasis on what the defendant did *not* do to be an inappropriate test for determining whether a substantial step was taken. Moreover, such a test is inconsistent with the Model Penal Code. A substantial step can be the very first step beyond mere preparation. That more steps could conceivably have been taken before actual commission of a crime does not render that first step insubstantial. Model Penal Code § 5.01, Comment 6(a), at 329. In *Montefolka*, the attempt crime was committed and completed when the defendant

had the victim in a "choke hold" and ordered her to remove her panties. Surely, breaking into the victim's home, chasing the victim, knocking her to the ground, holding her in a choke hold, and telling her to remove her underpants constitutes the use of force in an attempt to commit a sexual penetration. The victim was fortunate in that she was able to talk the defendant out of any further assault, but her calm head and good fortune do not negate the defendant's criminal conduct.

As Justice Theis points out in her dissent, the *Montefolka* court lost sight of the statutory definition of "penetration." *Montefolka*, 287 Ill. App. 3d at 213, 678 N.E.2d at 1058-59 (Theis, J., dissenting). As in the case at bar, the defendant in *Montefolka* would not have to expose himself to commit an act of penetration, nor would he have to fondle or caress the victim; yet, the court held that the defendant's failure to commit these acts destroyed the State's attempt case. The *Montefolka* court held, in essence, that when a man breaks into a home, holds a woman down on the floor, and orders her to remove her underwear, he is merely *preparing* to commit a sexual assault. We find this to be logically unsound and a dangerous precedent.

In our view, the *Montefolka* court also relied too heavily on precedent to settle an issue that is properly determined on the unique facts and circumstances of each case. See *Smith*, 148 Ill. 2d at 459, 593 N.E.2d at 535. The *Montefolka* court found that those cases affirming attempt convictions were based on conduct far more "overt and violent" than the conduct of the defendant (*Montefolka*, 287 Ill. App. 3d at 211, 678 N.E.2d at 1057; see also *People v. Kleba*, 110 Ill. App. 3d 345, 442 N.E.2d 605 (1982) (conviction for attempt (rape) affirmed where evidence showed the accused fondled the victim's vagina, conduct which, under today's statute, would constitute a criminal sexual assault, rather than attempt))—again focusing on the negative, *i.e.*, what that defendant did not do—and deemed itself "[l]imited by the thrust of these cases." *Montefolka*, 287 Ill. App. 3d at 211, 678 N.E.2d at 1057. That convictions were affirmed where the acts committed were overtly sexual and/or violent has no bearing on whether lesser acts will constitute a substantial step under a different set of circumstances, and the trial court in this case was clearly correct in convicting under section 12—13(a)(2) where no force or threat of force was required. 720 ILCS 5/12—13(a)(2) (West 1996).

Moreover, the cases reversing attempt convictions cited by the *Montefolka* court are either obsolete or otherwise distinguishable from the case at bar. Both *People v. Bush*, 19 Ill. 2d 151, 166 N.E.2d 91 (1960), and *People v. Pitts*, 89 Ill. App. 3d 145, 411 N.E.2d 586 (1980), were decided prior to the enactment of our current sexual assault statutes, and at a time when testimony of victims of sexual assault

had to be either "clear and convincing or substantially corroborated," for the charge to be deemed proved beyond a reasonable doubt and the conviction sustained. See *Schott*, 145 Ill. 2d at 202, 582 N.E.2d at 696.

*People v. Rayfield*, 171 Ill. App. 3d 297, 525 N.E.2d 253 (1988), reversed an attempt (criminal sexual assault) conviction because the State failed to prove the accused acted with the required intent. In *Rayfield*, the 15-year-old defendant entered the victim's apartment uninvited and asked the victim if she had any work for him. She said she did not, but continued to converse with the defendant. The victim testified that she was frightened by defendant because of his size and race and that she felt sorry for him because he was poor and attended a school for "slow learners." *Rayfield*, 171 Ill. App. 3d at 298, 525 N.E.2d at 254. At one point the defendant held the victim and, despite her protestations, attempted to carry her toward the bedroom. The victim was able to talk defendant out of any further assault and engaged him in conversation once again. Before he left her apartment, defendant asked the victim if she would show him her vagina. *Rayfield*, 171 Ill. App. 3d at 298-99, 525 N.E.2d at 254.

The issue before the *Rayfield* court was defendant's intent, not whether he had taken a substantial step. The court, however, misstated the requirements for an attempt (criminal sexual assault) conviction. The *Rayfield* court stated that an attempt (criminal sexual assault) conviction requires evidence of the intent to have "intercourse" not "sexual penetration," as defined by statute. *Rayfield* was decided four years after the enactment of current sexual assault laws, which define "sexual penetration" as "contact, however slight [with] the sex organ" (720 ILCS 5/12—12(f) (West 1996)). We are not bound to follow cases in which the law has been misapplied.

Rather, *People v. Jones*, 175 Ill. 2d 126, 676 N.E.2d 646 (1997), cited by defendant and the *Montefolka* court, supports our conclusion in this case. In *Jones*, the defendant was charged with attempt (aggravated criminal sexual abuse). Defendant, an adult male, while completely undressed and alone in a room with the 16-year-old male victim, asked the boy if he would masturbate defendant and if the boy would allow defendant to masturbate him. The boy declined and left the room. *Jones*, 175 Ill. 2d at 129-30, 676 N.E.2d at 648. The court held that the defendant's act of exposure, coupled with the request for sexual conduct, constituted a substantial step, notwithstanding the lack of any actual contact between the defendant and the victim. *Jones*, 175 Ill. 2d at 134, 676 N.E.2d at 650. A conviction for sexual abuse requires "sexual conduct," which, as defined by statute, requires actual contact, although such contact can be made through clothing. 720 ILCS 5/12—16(d), 12—12(e) (West 1996).

■ In *Jones*, the defendant made no overt move toward sexual contact with the victim. He did not attempt to grab the victim or reach out to touch him in any way. Nevertheless, the court found defendant's conduct was not "mere preparation" but a substantial step toward commission of criminal sexual abuse. The court's conclusion is consistent with the Model Penal Code approach, which focuses on the steps already taken, regardless of what remains to be done. The defendants in both *Jones* and the case at bar were interrupted by the acts of their potential victims. We hold, consistent with *Jones*, that when a substantial step has already been taken and the perpetrator's intent is clear, abandonment of the criminal purpose upon the resistance of the potential victim does not render those steps already taken insubstantial.

## B. Sufficiency of Evidence To Sustain Burglary Conviction

■ Defendant further contends reversal of his attempt conviction requires his burglary conviction be reversed as well. Although we need not reach this issue in light of our decision to affirm defendant's attempt (criminal sexual assault) conviction, we nevertheless take this opportunity to address defendant's argument. Residential burglary requires entry of the dwelling place of another with the intent to commit therein a felony or theft. 720 ILCS 5/19—3(a) (West 1996). Defendant's burglary conviction was predicated on his intent to commit a sexual assault against S.G. On appeal defendant argues the attempt (criminal sexual assault) conviction must be reversed because defendant's acts did not amount to a substantial step. Intent and a substantial step are two separate and distinct elements of an attempt crime. Defendant's burglary conviction must be affirmed if the State proved defendant entered S.G.'s residence with the intent to perform sexual penetration on S.G. while she was unable to give consent— which it did—regardless of whether defendant took a substantial step toward such act. See *People v. Clerk*, 68 Ill. App. 3d 1021, 1029, 386 N.E.2d 630, 635 (1979) (conviction of burglary with intent to commit rape is not legally inconsistent with acquittal on attempt (rape) charge where defendant did not take a substantial step toward committing rape).

## C. Truth in Sentencing

The material in this Section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

## D. Credit Against Fine

Defendant finally contends that he is entitled to credit against the $110 fine imposed by the trial court. Pursuant to section 110—14 of

the Code of Criminal Procedure of 1963 (725 ILCS 5/110—14 (West 1996)), any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense is allowed a credit of $5 for each day incarcerated. Defendant was incarcerated for 86 days. The State concedes under *People v. Lemons*, 229 Ill. App. 3d 645, 593 N.E.2d 1040 (1992), and *People v. Woodard*, 175 Ill. 2d 435, 677 N.E.2d 935 (1997), that defendant is entitled to full credit against the fine.

■ The prosecutor here asked for imposition of "court costs and $100 sexual assault fine that is mandated by statute, [s]ection 5—9—1.7 of the Unified Code." Section 5—9—1.7 has not been amended to preclude any reduction in the fine for time served either before or after sentencing (730 ILCS 5/5—9—1.7 (West 1996)) as have other statutory provisions (725 ILCS 240/10(b), (c) (West 1996); 730 ILCS 5/5—9—1(c) (West 1996)). Accordingly, defendant is entitled to a $5-per-day credit against the sexual assault fine. However, the remaining $10 is authorized ("there shall be added to each fine imposed upon conviction") and is not subject to crediting ("[s]uch additional penalty shall not be considered a part of the fine for purposes of any reduction made in the fine for time served either before or after sentencing"). 725 ILCS 240/10(b) (West 1996).

## III. CONCLUSION

For the foregoing reasons defendant's conviction is affirmed and the cause remanded for issuance of an amended judgment of sentence (1) stating he is entitled to computation of day-for-day good-time credit under section 3—6—3 of the Unified Code prior to enactment of truth in sentencing (730 ILCS 5/3—6—3 (West 1994)) and (2) showing the fine imposed has been reduced to $10.

Affirmed; cause remanded with directions.

STEIGMANN and KNECHT, JJ., concur.