THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD PATTERSON, Defendant-Appellant.

Second District    No. 2—99—0277

Opinion filed July 20, 2000.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Nancy L. Doepke, of Law Offices of Paul E. Gaziano, of Rockford, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Following a bench trial, defendant, Richard Patterson, appeals his conviction of attempted aggravated criminal sexual abuse (720 ILCS 5/8—4(a), 12—16(d) (West 1998)), contending that he was not proved guilty beyond a reasonable doubt, that the trial court erred by failing to suppress his statements to police, and that the trial court should have dismissed two counts of his indictment for violating his rights to a speedy trial. We affirm in part and vacate in part.

Following his arrest on June 11, 1998, defendant was charged by indictment with indecent solicitation of an adult (count I), solicitation (aggravated criminal sexual abuse) (count II), and attempted aggravated criminal sexual abuse (count III). Subsequently, on November 13, 1998, defendant was indicted on two more counts of attempted aggravated criminal sexual abuse (counts IV and V) and the State nol-prossed the solicitation counts.

Before trial, defendant filed four motions to dismiss and a motion to suppress to which he filed two more supplements. The trial court heard and denied defendant's motions to dismiss. Defendant agreed to waive a jury trial and, beginning on December 10, 1998, the trial court simultaneously heard defendant's motion to suppress and began the bench trial.

The following evidence was adduced at the hearing on the motion to suppress and the bench trial. Detective Richard White of the Lake County sheriff's department testified that, in June 1998, he was investigating sexual conversations conducted on the Internet. White adopted the screen name of "Yacoo" and portrayed himself as a 15-year-old boy named Rob. On June 9 and June 11, 1998, "Yacoo" conducted several conversations with defendant, who was using the screen name "Boysneeded." White testified that he conversed with defendant in a chat room and also using the instant messaging feature of America Online (AOL), which allowed two users to have a private conversation.

On June 11, 1998, White, as Yacoo, had the following instant message conversation:

"Boysneeded: having problems
Yacoo: yep
Boysneeded: lol
Yacoo: must be the rain
Boysneeded: yes not a good day but good for sex..
Boysneeded: would you like a blow job today?
Yacoo: ya it would be its cold and raining out
Yacoo: id love one
Boysneeded: so want me to cum to you
Boysneeded: are you home a lone
Yacoo: i do but im scard no my moms home
Boysneeded: oh
Yacoo: shes up stairs
Boysneeded: well if she is home i couldnt give a blow job then
Yacoo: if we ment [*sic*] some where
Boysneeded: where?
Boysneeded: then how would we do anything?
Yacoo: we could drive around and get to know each other then see
Boysneeded: I see so do youu [*sic*] want to do that ?
Boysneeded: so do you play around with any of you [*sic*] friends?
Yacoo: maybe we could meet at gurnee mills, no i havnt found a friend to do that with
Boysneeded: when do you want to meet..
Yacoo: whats good for you
Boysneeded: don't know need to get a shower and then a 30 min drive how will i find you?
Yacoo: you know where mcdonalds is
Boysneeded: don't know the area that is good a littel woried about this here about men going to meet young men and they get arrested"

White informed defendant that he would be wearing blue jeans, a White Sox baseball cap, and a white sweatshirt. Defendant informed White that he would be wearing jeans and a Chicago sweatshirt and would be driving a blue Jeep Grand Cherokee.

White testified that he proceeded to a McDonald's restaurant located near Gurnee Mills. He parked his unmarked car in a lot adjacent to the McDonald's lot and waited. White observed defendant exit the restaurant and return to his car. White drove his car behind defendant's, forming a "T"; in front of defendant's car was a cement berm or divider.

White testified that he approached defendant's car on the driver's side. White showed defendant his badge and identification and told him that he was a detective. White then asked defendant for identifica-

tion. White asked defendant why he was there and defendant replied that he was there to meet Rob. White asked defendant what Rob's age was, and defendant replied that Rob was 15. White then asked defendant if he knew it was against the law, and defendant replied that he thought the age of consent was 15. White next asked defendant why he had said on the Internet that he was afraid he was going to get arrested, to which defendant responded, "You got me there."

After this conversation, White asked defendant to accompany him to the Lake County sheriff's department for further investigation, and defendant agreed. Defendant was then seated in the front seat of White's vehicle and was not handcuffed or otherwise restrained. White testified that he placed defendant in an interrogation room.

Defendant was informed of his *Miranda* rights and signed a waiver. Defendant then produced a written statement in which he stated the following:

> "I was in a chat room on AOL [June 9, 1998]. Started talkin [*sic*] to 'Yacoo.' He told me he was 15. I gave him my Phone # to call me. Then today 6-10-98 [*sic*] I saw him come on line. Started to talk. He apologized to me that he didn't call so went on about this coming weekend that I'm going camping. Then I said to him if he wanted to meet today. He suggested meeting at Mcdonalds [*sic*]. I then agreed to meet him at 4:30 p.m. He said we would meet Drive around and see what happend [*sic*] and I asked him if he wanted a blow job. I drove out here waited at Mcdondals [*sic*] and that is when the Detec [*sic*] pulled up and asked me for I.d. Then asked why I was here. I told him to meet Rob. He asked his age. I said 15 years of age. He said do you know it's against the Law. I said I though[t] it was 15 with consent. He said no."

Defendant later consented to allow police to search his apartment.

White testified that he went to defendant's apartment. Defendant's roommate, Daniel Thomas, consented to a search of the premises. White testified that two computers were removed from defendant's apartment. The next day, defendant again signed a consent-to-search form, but he did not sign another rights waiver. The State attempted to establish that child pornography was stored on the seized computers but was unable to lay a proper foundation and, pursuant to defendant's objections, the trial court did not admit the evidence.

The trial court denied defendant's motion to suppress. The trial court found that defendant had been interrogated at the McDonald's restaurant but had not been in police custody.

Thomas testified that he and defendant were involved in a personal relationship and were business partners. Thomas testified that the computers seized by the police were used both for his and defendant's

business as well as for pleasure, where they would both converse in chat rooms with homosexual themes. Thomas testified that the computers had been used by approximately 100 other people in addition to defendant and himself. Thomas testified that he and defendant had made friends in their communications on the Internet. Thomas also testified that, in his experience, it was not uncommon for people to misrepresent information about themselves, such as age and appearance.

Thomas testified that, on June 11, 1998, he and defendant conversed on the computers. Later that day, defendant asked Thomas if he would like to go to the mall. Defendant informed Thomas that he was going to purchase some brandy snifters.

Defendant testified in his own behalf. He testified that he and Thomas were partners in a business engaged in the sale of food service programs. He also testified that they used the business's computers for both business and recreation.

Defendant testified that he frequently visited homosexually themed chat rooms. He decided whether to speak to someone in the chat room based on the person's screen name and profile, which would contain information about the person. Defendant testified that, in his experience, it was not uncommon for a person to misrepresent information about himself. Defendant estimated that he had met around 200 people conversing on the Internet. Of those, defendant testified that he had met about 100 face-to-face, and, of those 100 people, defendant believed that about 50 had misrepresented themselves in some way.

Defendant testified that his Internet communications focused on the homosexual lifestyle. Defendant testified that he engaged in "cybersex," which he defined as describing graphic sexual encounters over the Internet. Defendant testified that he had a number of screen names, including Boysneeded. Defendant testified that he created a profile for the Boysneeded screen name, which included the following information:

"Member Name: Rick
Location: Wonder Lake IL.
Birthdate: 8-3-70
Sex: Male
Marital Status: does it matter?
Hobbies: sex and being on my knees........
Occupation: Blowing, and if you are not younger them [sic] me do not I[nstant] M[essage] me please only for the younger...
Personal Quote: can u handel [sic] my mouth???"

Defendant testified that, on June 9, 1998, he met an individual

with the screen name Yacoo over the Internet while visiting an adult chat room using the screen name of Boysneeded. Defendant sent a picture of himself to Yacoo. Defendant testified that he believed Yacoo was 15 years old due to the information contained within Yacoo's profile, but he was not sure. Defendant testified that, using instant messages, he and Yacoo discussed their interests and their sexuality. Defendant testified that Yacoo told him that he was confused about his sexuality. Yacoo asked defendant to come and see him but defendant declined.

Defendant testified that he next conversed with Yacoo three times on June 11, 1998. Defendant testified that he was also conversing with other individuals. Their conversations were brief and did not concern sex. Later that day, Yacoo contacted defendant and, during that conversation, defendant asked Yacoo if he wanted oral sex. Defendant testified that he did not intend to engage in oral sex with Yacoo. Defendant agreed to meet Yacoo at McDonald's in order to get to know him.

Defendant testified that he went to McDonald's, got a soft drink, and waited. He did not know what Yacoo would be like, and he testified that he had met people face-to-face who turned out to be different from how he had imagined them on the Internet. Defendant hoped he could make a friend and get to know Yacoo. Defendant had no expectations of having sexual relations with Yacoo at McDonald's or in the parking lot. When no one arrived at McDonald's, defendant went to his vehicle.

Defendant testified that, while sitting in his vehicle, White approached him on the driver's side. White showed defendant his badge and asked to see defendant's identification. Defendant informed White that he was there to meet a 15-year-old named Rob. White asked defendant to exit his vehicle. Defendant testified that he and White discussed consent and that defendant informed White that he believed that the age of consent was 15.

The trial court found defendant guilty of counts III through V, all of which were attempted aggravated criminal sexual abuse. The trial court sentenced defendant to a four-year term of imprisonment on count III (attempted aggravated criminal sexual abuse). Defendant timely appeals.

Initially, defendant contends that the State failed to prove him guilty beyond a reasonable doubt of attempted aggravated criminal sexual abuse. When reviewing a challenge to the sufficiency of the evidence, the reviewing court considers whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a

reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). This standard of review applies equally to bench trials. *People v. Bailey*, 311 Ill. App. 3d 265, 268-69 (2000). The reviewing court will not retry the defendant; rather, the determination of the weight to be given to the testimony of the witnesses, their credibility, and the reasonable inferences to be drawn from the evidence are matters for the trier of fact. *Bailey*, 311 Ill. App. 3d at 268-69.

■ ■ A person commits the crime of attempt when, "with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8—4(a) (West 1998). The impossibility of completing the offense attempted is not a defense. 720 ILCS 5/8—4(b) (West 1998). Aggravated criminal sexual abuse, as pertinent to this case, is defined as "an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused was at least 5 years older than the victim." 720 ILCS 5/12—16(d) (West 1998). "Sexual penetration" includes fellatio. 720 ILCS 5/12—12(f) (West 1998).

■ Defendant first contends that the evidence was insufficient to prove that he had the specific intent to commit aggravated criminal sexual abuse. The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances. *People v. Sutton*, 252 Ill. App. 3d 172, 185 (1993). The trier of fact makes the factual determination regarding a defendant's intent, and that determination will not be disturbed on review unless the evidence is so improbable that it raises a reasonable doubt about the defendant's guilt. *People v. Cosby*, 305 Ill. App. 3d 211, 219 (1999).

Defendant argues that he did nothing while at the McDonald's indicative of an intention to perform a sex act with a 15-year-old. Defendant argues that he did not make any overt sexual advances to anyone, did not expose or touch himself, did not approach any youths, and did not make any utterances of a sexual nature while at McDonald's. Defendant thus concludes that there was insufficient evidence from which to conclude that he had the intent to commit aggravated criminal sexual abuse. We disagree.

■ The evidence in this case was sufficient to prove that defendant possessed the specific intent to commit the offense of aggravated criminal sexual abuse. Defendant offered to perform oral sex on Yacoo that day. Further, defendant arrived at the agreed-upon place, at the agreed-upon time, wearing the clothing he had informed Yacoo he would be wearing and driving the car he had informed Yacoo he would be driving. Additionally, defendant sent a picture of himself to Yacoo to facilitate Yacoo's identification of defendant at their planned meet-

ing. Last, when White approached defendant, defendant admitted that he was waiting for a 15-year-old boy named Rob. Viewing this evidence in the light most favorable to the prosecution results in the conclusion that the State provided sufficient evidence of defendant's intent and that the trier of fact could reasonably conclude, beyond a reasonable doubt, that defendant possessed the specific intent to commit aggravated criminal sexual abuse.

Defendant's reliance upon *People v. Rayfield*, 171 Ill. App. 3d 297 (1988), and *People v. Pitts*, 89 Ill. App. 3d 145 (1980), is misplaced. In *Rayfield*, the court determined that the defendant did not have the specific intent to commit the offense of criminal sexual assault. The evidence showed that the victim agreed to allow the defendant to hold her but he refused to let go when she asked him, that the defendant carried the victim into her bedroom, that the defendant asked to see the victim's vagina, and that the defendant left after the victim refused and informed the defendant that her boyfriend was expected. *Rayfield*, 171 Ill. App. 3d at 299. The court held that, as the defendant did not order the victim to disrobe, did not refer to the act of sexual intercourse, did not disrobe or expose himself, did not make any overt act toward the victim's genitals or fondle the victim's breasts or buttocks, and left the premises after the victim refused his request to see her vagina, he did not have the intent to commit the offense of criminal sexual assault. *Rayfield*, 171 Ill. App. 3d at 299-300.

In *Pitts*, the court determined that the defendant did not possess the specific intent to commit rape. The court first noted that rape could be committed only by the defendant engaging in sexual intercourse with the victim. *Pitts*, 89 Ill. App. 3d at 147. The court explained that the defendant knocked a prison counselor to the floor, attempted to put his hands in her blouse, fondled her breasts, and grabbed at her jeans (but according to the victim, did not try to unsnap the jeans). The defendant lay on her and moved up and down until he experienced an orgasm. *Pitts*, 89 Ill. App. 3d at 146. The court held that, because the defendant made no overt move toward the victim's genitals and did not disrobe or expose himself, and because the defendant expressed his satisfaction with the victim's position as she was lying on her stomach while fully clothed, the evidence did not indicate that the defendant possessed the intent to commit the offense of rape. *Pitts*, 89 Ill. App. 3d at 147. Further, the court noted that the defendant's actions indicated only that he sought sexual satisfaction for himself in a manner other than engaging in sexual intercourse and, therefore, defendant could not have attempted to commit rape.

These cases are distinguishable from the instant case because each defendant's actions affirmatively disproved that he held the intent to

commit the specific crime with which he was charged. Each defendant had the opportunity and the control over the situation to complete the crime but stopped well short of committing the sexual crime with which each was charged. In the instant case, by contrast, defendant had done everything it was possible for him to do short of actually committing aggravated criminal sexual abuse. He had offered to perform oral sex that day, he had informed Yacoo of what he would be wearing and driving, and he had proceeded to the appointed place at the appointed time wearing and driving what he had described to Yacoo. Instead of disproving his intent to commit the offense of aggravated criminal sexual abuse, defendant's actions confirm his intent.

Defendant next contends that he did not take a substantial step towards the completion of aggravated criminal sexual abuse. Defendant argues that he was not "in dangerous proximity of committing" a crime and that, therefore, he did not take the substantial step necessary to sustain his conviction of attempted aggravated criminal sexual abuse. We disagree.

■ The issue confronting this court is what conduct constitutes a "substantial step" towards the commission of the offense of aggravated criminal sexual abuse. It is not necessary that a defendant complete the last proximate act in order to be convicted of attempt; yet mere preparation is insufficient to be considered a substantial step. *People v. Smith*, 148 Ill. 2d 454, 459 (1992). Precisely what conduct will be held to be a substantial step "must be determined by evaluating the facts and circumstances of each particular case." *Smith*, 148 Ill. 2d at 459.

■ In the present case, we conclude that defendant had completed every step and action that he possibly could have and, therefore, defendant's conduct constituted a substantial step towards the offense of aggravated criminal sexual abuse. Defendant had agreed to perform oral sex on Yacoo that day. He had arranged to meet Yacoo at a specific place and time and informed Yacoo what clothes he would wear and what car he would drive. Defendant sent a picture of himself to aid Yacoo further in identifying defendant. Defendant also traveled to the rendezvous at the appointed time and admitted that he was waiting for 15-year-old Rob at the time he was questioned by White. Given that Yacoo/Rob did not actually exist, defendant had taken every possible step he could have taken in order to commit the offense of aggravated criminal sexual abuse. Accordingly, we hold that defendant's conduct constituted a substantial step and determine that there was sufficient evidence from which the trial court could conclude that defendant committed the crime of attempt.

The cases relied upon by defendant are distinguishable. In *Smith*,

the court held that, although the defendant admitted that he intended to rob a jewelry store, possessed a weapon and a pillowcase, and had stolen a cab to serve as a getaway vehicle, the fact that he had not identified his target precluded a finding that the defendant had taken a substantial step. *Smith*, 148 Ill. 2d at 462-63. Here, by contrast, defendant had completed his preparations by arranging the time and place of the meeting and the manner in which he could be recognized. Moreover, defendant had identified his target, the fictional 15-year-old Yacoo/Rob. Nothing more remained for defendant to do other than gain control over Yacoo/Rob. Accordingly, *Smith* is distinguishable.

In *People v. Brown*, 75 Ill. App. 3d 503 (1979), the court determined that, although the defendant intended to steal pop bottles from an enclosure, he had not made an overt act toward that end even though he was near the enclosure at the time of his arrest. *Brown*, 75 Ill. App. 3d at 506. Here, defendant completed his preparations and took a substantial step toward the commission of the crime by traveling to the agreed-upon meeting place. Further, defendant admitted to White that he was waiting for his intended victim, the fictional Yacoo/Rob. Thus, defendant's conduct consisted of more than his mere presence at a suspicious place and, in this case, he had affirmatively acted to accomplish his criminal intention. *Brown* is therefore distinguishable.

In *People v. Montefolka*, 287 Ill. App. 3d 199 (1997), the court held that the State failed to prove that the defendant had taken a substantial step toward an act of sexual penetration even though the defendant snuck into the victim's home, struggled with her, and repeatedly told her to take off her underwear. *Montefolka*, 287 Ill. App. 3d at 202. The court held that, in the absence of any overt act directed toward the victim's genitals, the disrobing of the victim or himself, or a far more overt and violent sexual and physical attack, the defendant had not completed a substantial step toward the crime of aggravated criminal sexual assault. *Montefolka*, 287 Ill. App. 3d at 209, 211. Here, by contrast, there was no actual victim with whom defendant could engage in oral sex. Rather, defendant's substantial step was arranging the rendezvous with his victim and then keeping the appointment by traveling to the McDonald's at the arranged time. Indeed, when approached by White, defendant admitted that he was waiting for Rob. Thus, although defendant committed no overtly sexual act in the McDonald's parking lot, it was impossible for him to do so. Defendant completed all the conduct that he could; nothing more remained except to meet his victim. Accordingly, we determine that *Montefolka* is distinguishable.

Defendant also cites *People v. Thoma*, 171 Ill. App. 3d 313 (1988). The court determined that the defendant took no substantial step to-

ward the crime of solicitation of a prostitute where the defendant's conduct consisted of mere speech. *Thoma*, 171 Ill. App. 3d at 315. In concluding that the defendant's conduct was merely speech, the court noted that defendant asked an undercover officer for oral sex but did not allow the officer to enter his car, did not actually agree to a price or promise to pay, and did not show the officer any money. *Thoma*, 171 Ill. App. 3d at 314-15. Here, instead of merely suggesting oral sex to Yacoo, defendant also traveled to the rendezvous, looking for his victim. Defendant's conduct went far beyond the mere speech identified in *Thoma* and, therefore, *Thoma* is distinguishable.

■ Defendant next contends that the trial court erred in denying his motion to suppress statements. Defendant contends that he was taken into custody at the McDonald's restaurant when White began to question him and that he was not at that time apprised of his *Miranda* rights. Defendant concludes that the trial court's failure to suppress statements was manifestly erroneous. We disagree.

A defendant is entitled to *Miranda* warnings during an interview with police when he is in police custody. *People v. Goyer*, 265 Ill. App. 3d 160, 164 (1994). A defendant is in custody when he is formally placed under arrest or he is restrained to the degree associated with a formal arrest. *Goyer*, 265 Ill. App. 3d at 164. Additionally, the defendant must also subjectively believe himself to be under arrest in order to trigger the requirement that *Miranda* warnings be given. *Goyer*, 265 Ill. App. 3d at 164-65. In determining whether an interrogation is custodial, the court must consider whether a reasonable person in the defendant's position, innocent of any crime, would believe himself to be in custody. *Goyer*, 265 Ill. App. at 167. The court considers the location, mood, and length of the interview; the number of police officers present; whether the defendant's family is present or absent; any indicia of formal arrest, such as physical restraint, the show of weapons or force, booking, or fingerprinting; and the manner by which the defendant arrived at the place of the interview. *Goyer*, 265 Ill. App. 3d at 166. When reviewing the trial court's determination on a motion to suppress, the reviewing court will not disturb the trial court's determination unless it is manifestly erroneous. *People v. Wheeler*, 281 Ill. App. 3d 447, 454 (1996).

We note that defendant presented no evidence at the hearing on the motion to suppress concerning whether he subjectively believed that he was under arrest. The State argues that this failure to carry his burden of production is a sufficient ground to affirm the trial court's ruling. The State, however, failed to make this argument to the trial court, and we must therefore turn to the objective consideration of whether defendant was in custody at the time White questioned him. See *Goyer*, 265 Ill. App. 3d at 166.

Defendant argues that White took him into custody before beginning to question him at the McDonald's. Defendant contends that White's parking his car behind defendant's deprived him of all freedom of movement. Further, defendant contends that White's display of his badge and failure to inform defendant either of his *Miranda* rights or of his freedom to leave would lead a reasonable innocent person to believe that he was under arrest. We disagree.

The evidence shows that the questioning occurred in a parking lot of a McDonald's restaurant while defendant was seated in his car. This location had been chosen by defendant to meet Yacoo/Rob, and defendant traveled there of his own volition. The questioning lasted for about five minutes and occurred in a conversational tone. White was the only police officer present; he was in plain clothes and arrived in an unmarked car. White did park his vehicle behind defendant's, which prevented defendant from backing out, but there is no indication that defendant ever displayed an unwillingness to speak with White or that he asked to leave. We note that defendant's car was not running at the time White approached him and defendant never asked White to move his car. White asked defendant to accompany him to the police station. Defendant was not restrained, handcuffed, or searched; he rode in the front seat with White to the police station. We conclude, based on this record, that the trial court's determination that defendant was not in custody was not manifestly erroneous.

Defendant attempts to analogize this case to that of *People v. Rivera*, 304 Ill. App. 3d 124 (1999). In *Rivera*, the defendant was surrounded by six officers in four police cars and his car was searched, revealing a grocery bag thought to contain cocaine. *Rivera*, 304 Ill. App. 3d at 128-29. The court held that this was a police-dominated environment and that the removal of the bag gave the officers probable cause to arrest defendant, thereby triggering the need to inform the defendant of his *Miranda* rights prior to further questioning. *Rivera*, 304 Ill. App. 3d at 129. Here, by contrast, only one officer in plain clothes was present. Further, White's questions were dual-purposed: while they went to elements of the offense, they also confirmed defendant's identity. *Rivera* is therefore inapposite to the facts of this case.

We need not consider defendant's further argument about suppressing the written statement. Defendant bases this argument on the premise that the statement was fruit of the tainted questioning at the McDonald's restaurant. As we have determined that the questioning at the McDonald's restaurant was not improper, defendant's argument fails.

■ Defendant last contends that the trial court erred by refusing

to dismiss counts IV and V of the indictment, which were added 147 days after defendant was taken into custody, in violation of the requirements of the speedy trial act (725 ILCS 5/103—5(a) (West 1998)). The State confesses error and agrees that counts IV and V should be vacated. See *People v. Gooden*, 189 Ill. 2d 209, 218 (2000). Accordingly, we vacate defendant's conviction on counts IV and V of the indictment. We note that the trial court entered sentence only on count III and our vacation of counts IV and V does not affect defendant's conviction or sentence on count III.

The judgment of the circuit court of Lake County is affirmed in part and vacated in part.

Affirmed in part and vacated in part.

BOWMAN, P.J., and THOMAS, J., concur.